Hillsborough
No. 82-499
No. 82-515

*In re* CINDY G.

*In re* ROGER D.

October 5, 1983

*Gregory H. Smith*, attorney general (*Marc R. Scheer*, assistant attorney general, on the brief and orally), for the State in No. 82-499.

*Ahlgren & Smith*, of Manchester (*Robert D. Smith* on the brief and orally), for Cindy G. in No. 82-499.

*Gregory H. Smith*, attorney general (*Betsy S. Westgate*, assistant attorney general, on the brief, and *Marc R. Scheer*, assistant attorney general, orally), for the State in No. 82-515.

*Michael R. Chamberlain*, of Manchester, by brief and orally, for the mother of Roger D. in No. 82-515.

KING, C.J. These cases were consolidated because they require us to interpret two similar statutory sections, RSA 169-B:29 (Supp. 1981) and RSA 169-D:20 (Supp. 1981), which provide for de novo appeals to the superior court in certain circumstances in cases involving delinquent children and children in need of services.

### I. *Cindy G.*

On March 4, 1981, Cindy G. was arraigned in Manchester District Court, Juvenile Division, on the charge that she was a delinquent child, in that she had committed the crime of simple assault. Cindy G. pleaded "true" to the charge. At a dispositional hearing on July 16, 1981, Cindy G. was committed to the Youth Development Center (YDC) for the term of her minority, but the sentence was suspended on the condition that Cindy G. reside with her parents and observe a curfew. She was also placed on probation until June 30, 1982. Cindy G. did not appeal this sentence.

In May 1982, Cindy G. was charged with a probation violation. On June 2, 1982, after a hearing on the charge, Cindy G. was found to have violated probation and was ordered to be committed to the YDC, but the execution of the sentence was stayed until June 16, 1982. On that date, the execution of the sentence again was stayed until October 28, 1982.

A hearing was scheduled for September 10, 1982, for the purpose of reviewing the stay of execution. Cindy G's probation officer notified Cindy G. and Cindy G.'s mother of the hearing by telephone,

although Cindy G. denies receiving notice. While Cindy G. was not present at the hearing, her counsel did attend. Cindy G.'s father also attended the hearing and told the court that Cindy G. had run away from home. After being informed that Cindy G. had run away, the district court ruled that Cindy G. had forfeited her right to a hearing through her deliberate absence, and lifted the stay of execution. He ordered that she be committed to the YDC for the term of her minority.

Cindy G. was arrested several days later and taken to the YDC. She then obtained new counsel, and filed a notice of appeal to the superior court for a trial de novo. The State filed a motion in superior court to remand the case to the district court, on the ground that the period for appeal had ended on July 2, 1982, thirty days after Cindy G.'s commitment to the YDC, even though at that time the execution of the sentence had been stayed. After a hearing on the State's motion, the Superior Court (*Contas*, J.) granted the State's motion to remand the case to district court, and Cindy G. appealed.

II. *Roger D.*

On March 4, 1982, Roger D. was adjudicated a "child in need of services." After a dispositional hearing, the Nashua District Court ordered Roger D. placed in the Spaulding Youth Center, finding that all parties agreed to this placement. The court directed that the disposition be reviewed in six months. Roger D. did not exercise his right to appeal provided by RSA 169-D:20 (Supp. 1981), nor did his mother appeal.

Several months after Roger D.'s placement at the Spaulding Youth Center, his mother became concerned that the Spaulding program was not helping him. On July 22, 1982, and again on August 27, 1982, hearings were held in district court concerning Roger D.'s placement there. The district court refused to modify the disposition ordered on March 4, 1982, stating that there was insufficient evidence to support a finding that there had been a change of circumstances, see RSA 169-D:19 (Supp. 1981), and subsequently denied the mother of Roger D.'s motion for reconsideration.

The mother of Roger D. attempted to appeal the district court's decision to the superior court. The State filed a motion in superior court to remand the appeal for lack of jurisdiction on the ground that, under RSA 169-D:20 (Supp. 1981), the mother of Roger D.'s right to appeal had ended thirty days after March 4, 1982. After a hearing, the Superior Court (*Contas*, J.) granted the State's motion to remand the case to district court, and Roger D.'s mother appealed.

III. *Right of De Novo Appeal Under The Applicable Statutes.*

These cases require us to construe the right of de novo appeal provided for in the two statutes governing delinquent children and children in need of services. The language providing for de novo appeal in both statutes is virtually identical. RSA 169-B:29 (Supp. 1981) defines the right of appeal in cases involving delinquent children. It provides:

> "An appeal, under this chapter, may be taken to the superior court by the minor *within 30 days of the final dispositional order;* but an appeal shall not suspend the order or decision of the court unless the court so orders. The superior court shall hear the matter *de novo,* and shall give an appeal under this chapter priority on the court calendar."

(Emphasis added.) RSA 169-D:20 (Supp. 1981) defines the right of appeal in cases involving children in need of services. It provides:

> "An appeal, under this chapter, may be taken to the superior court by the child, parent, guardian or custodian, *within 30 days of the final dispositional order*, but an appeal shall not suspend the order or decision of the court unless the court so orders. The superior court shall hear the matter *de novo,* and shall give an appeal under this chapter priority on the court calendar."

(Emphasis added.) These sections providing for de novo appeals were adopted in 1979 as part of the comprehensive reorganization of RSA chapter 169, the law dealing with abused, neglected and delinquent children, and children in need of services. *In re Russell C.,* 120 N.H. 260, 264, 414 A.2d 934, 936 (1980). Under RSA chapter 169, which was repealed in 1979 with the passage of RSA chapters 169-B, 169-C, and 169-D, the right to appeal in cases involving neglected and delinquent children, and children in need of services, was defined as follows:

> "An appeal may be taken to the superior court from any order or decision of whatever nature made by a district or municipal court, pursuant to this chapter, but an appeal shall not suspend the order or decision of the court unless the court so orders. Such appeal may be taken within thirty days by any party having an interest, including the state, in matters of neglected children. The superior court shall give appeals under this section priority on the court calendar."

Laws 1972, 16:1.

The State contends that in amending the language dealing with appeals in the two statutes under consideration, the legislature intended to limit de novo review of juvenile cases to a single review of the district court's adjudication that a child is delinquent or is in need of services, and of the final disposition by the court immediately after this adjudication. The State claims that the appeal provisions were not intended to apply to a district court's lifting of a stay of execution of a sentence, or to a subsequent district court review of the disposition, such as the district court's review which is required annually, *see* RSA 169-B:31 (Supp. 1981); RSA 169-D:21 (Supp. 1981), or, in the case of children in need of services, to the district court's review required upon receipt of a motion for modification, *see* RSA 169-D:19 (Supp. 1981).

On the other hand, Cindy G. and the mother of Roger D. argue that the amendment of the language of the appeal provision was only intended to eliminate interlocutory appeals and was not intended to limit the de novo review of district court orders to the adjudication and final disposition made immediately after the adjudicatory hearing. They argue that the legislature intended to permit de novo review of every dispositional order of the district courts.

In both RSA chapter 169-B (Supp. 1981) and RSA chapter 169-D (Supp. 1981), the language creating the right to de novo appeal is the same: "an appeal, under this chapter, may be taken to the superior court . . . within 30 days of *the final dispositional order. . . .*" *See* RSA 169-B:29 (Supp. 1981) (emphasis added); RSA 169-D:20 (Supp. 1981) (emphasis added). In order to decide whether a party can appeal the lifting of a stay of execution of a sentence or the denial of a motion for modification, we must determine what the legislature meant by the term "the final dispositional order."

■■ In any case involving the interpretation of a statute, we begin by examining the language of the statute itself. *N.H.-Vt. Health Serv. v. Comm'n of Ins.*, 122 N.H. 268, 272, 444 A.2d 508, 509–10 (1982). We note, initially, that the sections provide for appeals within thirty days of "*the* final dispositional order." The legislative use of the definite article "*the*" indicates that the legislature intended to provide for a single appeal. If the legislature had provided for appeals within a limited time after "*a* final dispositional order," we would view this as an indication that the right to appeal was not so limited.

■ In addition, language used in other sections of the statutes also supports this interpretation. Under both statutes a juvenile is entitled to an adjudicatory hearing in district court to determine

whether he is a delinquent or a child in need of services. *See* RSA 169-B:16 (Supp. 1981); RSA 169-D:14 (Supp. 1981). If the district court finds that the child is delinquent or in need of services, the court holds a "hearing on final disposition" or a "final dispositional hearing" within a certain period of time to determine the most appropriate disposition for the juvenile. *See* RSA 169-B:16, V (Supp. 1981); RSA 169-D:14, V (Supp. 1981). After this hearing, the district court issues an order concerning the final disposition. We conclude from the similarity of this language to that contained in the appeal provisions that, in providing for appeals from "the final dispositional order," the legislature was referring to the order issued *after* the final dispositional hearing described in these sections.

■ Cindy G. and the mother of Roger D. contend that the appeal provisions should apply to the district court's lifting of a stay of execution, its rulings on a motion for modification of a dispositional order, and its annual review of a dispositional order. There is no language in the modification provision or the annual review provision, or in the appeal provision itself, to indicate that these subsequent proceedings involve "the final dispositional order" for purposes of the appeal sections.

■ Cindy G. and the mother of Roger D. further claim that it would be unfair to interpret these sections as permitting de novo review only after the final dispositional hearing, because a juvenile is often subject to the jurisdiction of a district court for a number of years and the disposition can be modified numerous times over that period. While it is true that the disposition of a juvenile may be modified a number of times during this period, we cannot agree that this presents an unfair situation. The legislature may have believed that de novo review by the superior court was necessary only after a district court's adjudication that a child was delinquent or in need of services and the final dispositional hearing. The legislature provided for review of the disposition of a juvenile by the district court on an annual basis and, in addition, for children in need of services, upon a motion for modification. The legislature may have considered this review by the district court, which has greater expertise in juvenile law than the superior court, to be sufficient; it may have believed that de novo review by the superior court of the district court's monitoring of the disposition was not necessary.

The legislative history of the adoption of RSA chapters 169-B (Supp. 1981) and 169-D (Supp. 1981) provides no additional insight into the legislature's intent in granting the right of appeal within thirty days of "the final dispositional order." Cindy G. and the mother of Roger D. both cite an article published after the adoption

of these statutes which discusses various provisions of the statutes. *See* Harkaway, Bianco, Leidinger & Barry, *New Hampshire Juvenile Justice Code of 1969* [*sic*]: *An Overview*, 21 N.H.B.J. 45 (1980). The authors of this article state that RSA 169-B:29 (Supp. 1981) and RSA 169-D:20 (Supp. 1981) were amended to eliminate the right to interlocutory appeals. *Id.* at 60, 87.

Citing this article, Cindy G. and the mother of Roger D. argue that the legislature intended only to eliminate interlocutory appeals, and did not intend to limit a party's right to appeal later dispositional orders. While we agree with the authors of the article that these provisions had the effect of eliminating interlocutory appeals, we are not persuaded that this was the sole intention of the legislature.

For these reasons, we hold that RSA 169-B:29 (Supp. 1981) and RSA 169-D:20 (Supp. 1981) create a right to de novo appeal within thirty days of the orders arising from the final dispositional hearing held immediately after the adjudicatory hearing. They do not apply to a subsequent change in disposition, such as the lifting of a stay of execution or the denial of a motion for modification.

We must now apply this interpretation to the cases before us. Cindy G. had a right to a de novo appeal within thirty days of the final dispositional hearing held on July 16, 1981. Because the lifting of the stay of execution on September 10, 1982, did not constitute "the final dispositional order" for purposes of RSA 169-B:29 (Supp. 1981), she had no right to a de novo appeal in superior court from that ruling of the district court. Before determining whether the superior court properly remanded No. 82-499 to the district court, we will discuss in part IV two additional issues raised by Cindy G. in her appeal.

Roger D. and his mother had a right to a de novo appeal within thirty days of the final dispositional hearing on March 4, 1982. Because the later denial of a motion to modify the disposition did not constitute "the final dispositional order" for purposes of RSA 169-D:20 (Supp. 1981), neither Roger D. nor his mother had a right to a de novo appeal to superior court after the denial of the motion to modify. For this reason, we hold that the superior court properly remanded No. 82-515 to the district court.

IV. *Cindy G.—Remaining Issues.*

Cindy G. argues that, even if we hold that she had no

right to a de novo appeal, the superior court erred in not treating her request for review as a petition for writ of certiorari. A writ of certiorari will only be granted in extraordinary circumstances, when the "substantial ends of justice" so require. *State v. Brackett*, 122 N.H. 716, 718, 449 A.2d 1210, 1212 (1982). The test for granting a writ of certiorari is whether the court acted "illegally in respect to jurisdiction, authority or observance of the law . . . or has abused its discretion or acted arbitrarily or capriciously." *Id.*, 449 A.2d at 1212. Even assuming, *arguendo*, that the superior court was required to consider Cindy G.'s attempted appeal as a petition for writ of certiorari, we cannot conclude that the superior court erred in not granting the writ. Certiorari is not available as of right, but at the discretion of the court. *Wood v. General Elec. Co.*, 119 N.H. 285, 288, 402 A.2d 155, 157 (1979). We find no abuse of discretion in this case.

Finally, Cindy G. claims that the district court could not lift the stay of execution and commit her to the YDC at the September 10, 1982, hearing, because Cindy was not present at the hearing. She likens the lifting of the stay to actual sentencing by a court. She contends that the district court's lifting of the stay was erroneous because a defendant has a common-law right to be present at sentencing, which cannot be waived. Furthermore, she appears to claim that she has a constitutional right to be present for sentencing even if she has voluntarily absented herself from the sentencing proceeding. She also points to Rule 43(a) of the Federal Rules of Criminal Procedure which requires a defendant to be present at sentencing.

Even assuming, *arguendo*, that the lifting of the stay of execution was the equivalent of sentencing, we find no merit to Cindy G.'s arguments. It is true that, at common law, a defendant has a right to be present at the time of sentencing if corporal punishment is imposed. *People v. Brown*, 102 Cal. App. 2d 60, 62, 226 P.2d 609, 610 (1951); *Joseph v. State*, 236 Ind. 529, 540, 141 N.E.2d 109, 114 (1957), *appeal dismissed*, 359 U.S. 117 (1959); *State v. Fennell*, 218 Kan. 170, 176, 542 P.2d 686, 692 (1975); *see* Annot., 6 A.L.R.2d 997, 997 (1949). We believe, however, that if a defendant voluntarily absents herself at the time of sentencing, she has waived this right. *People v. Brown*, 102 Cal. App. 2d at 62, 226 P.2d at 610; *see State v. Camino*, 188 Ariz. 89, 91, 574 P.2d 1308, 1310 (Ariz. Ct. App. 1977); *People v. Lane*, 91 Ill. App. 3d 827, 830, 414 N.E.2d 1249, 1251 (1980); *People v. Carson*, 428 N.Y.S.2d 123, 126 (N.Y. Crim. Ct. 1979).

 The sentencing of a defendant *in absentia*, where the defendant has voluntarily absented herself from the sentencing proceeding, does not violate federal due process requirements. *Byrd v. Hopper*, 537 F.2d 1303, 1304–05 (5th Cir. 1976), *cert. denied*, 429 U.S. 1048 (1977); *People v. Carson*, 428 N.Y.S.2d at 126. Nor does it violate any provision of our State Constitution. *Cf. State v. Lister*, 119 N.H. 713, 716, 406 A.2d 967, 969 (1979) (trial *in absentia* does not violate New Hampshire Constitution).

 New Hampshire has not adopted Rule 43(a) of the Federal Rules of Criminal Procedure which requires a defendant to be present at sentencing. We cited Rule 43(b), which provides for the continuation of a trial if a defendant voluntarily absents himself after the trial has begun, in *State v. Lister*, 119 N.H. 713, 715, 406 A.2d 967, 968 (1979), in which we held that the trial of a defendant *in absentia* did not violate the Federal or State Constitutions. In citing Rule 43(b), we merely noted that this provision had been determined not to violate the Federal Constitution. We did not adopt Rule 43(b) in *Lister*, and our citation of it there does not require us to adopt Rule 43(a) in this case.

For the foregoing reasons, we hold that the superior court properly remanded No. 82-499 to the district court.

*No. 82-499 affirmed;*
*No. 82-515 affirmed.*

SOUTER, J., did not sit; the others concurred.