Henry **MALACHOWSKI** and Julia
Malachowski, Plaintiffs,
Appellants,

v.

**CITY OF KEENE, et al.,**
Defendants, Appellees.

No. 85–1583.

United States Court of Appeals,
First Circuit.

Submitted Nov. 15, 1985.
Decided March 28, 1986.

Henry Malachowski and Julia Malachowski, on brief, pro se.

John P. Shea and Elizabeth Cazden, Manchester, N.H., on brief, for defendant, appellee City of Keene.

Martha V. Gordon and Devine, Millimet, Stahl & Branch, Professional Ass'n, Manchester, N.H., on brief, for defendant, appellee Youth Services, Inc.

Loretta S. Platt, Asst. Atty. Gen., and Stephen E. Merrill, Atty. Gen., Concord, N.H., on brief, for defendants, appellees Judge Bernard J. Hampsey, Jr. and Judge Richard J. Talbot.

Richard C. Gagliuso, Linda S. Letheren, and Hamblett & Kerrigan, P.A., Nashua, N.H., on brief, for defendant, appellee David S. Park.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

PER CURIAM.

This is an appeal brought by plaintiffs-appellants Henry and Julia Malachowski, proceeding *pro se*, from orders of the United States District Court for the District of New Hampshire dismissing appellants' claims under 42 U.S.C. § 1983 for injunctive relief and damages against ten defend-

ants-appellees. Appellants' complaint alleged that their federal constitutional rights had been violated in the course of juvenile delinquency proceedings in the Keene, New Hampshire District Court against their daughter, Amy, which resulted in Amy's release into foster care outside appellants' custody. We affirm the district court's dismissal.

## I. FACTUAL BACKGROUND.

Amy initially was placed in foster care on January 24, 1984, pursuant to a consent order entered as a result of a petition alleging abuse and/or neglect of Amy filed in Keene District Court by the New Hampshire Division of Welfare. Amy was returned to appellants' custody on April 12, 1984. On August 3, 1984, Mrs. Malachowski called the Keene police to report that Amy, then sixteen years old, had run away. Mr. Malachowski located her at a friend's house and brought her home. When Patrolman LaCoste arrived at the Malachowski residence in response to Mrs. Malachowski's call, he knocked on the door and Mrs. Malachowski opened it. Through the open door he saw and heard—taking the facts as alleged by appellants—Amy throwing a "tantrum" and directing abusive language at Mr. Malachowski (appellants deny that Amy struck him). LaCoste then entered the house, allegedly without appellants' permission, and took Amy into custody.

The Keene police then contacted Judge Bernard Hampsey and obtained authorization to hold Amy overnight pending arraignment. The next morning, August 4, Amy was arraigned in Keene District Court on a juvenile delinquency petition, signed by Sergeant Brown, juvenile officer in the Keene Police Department, alleging disorderly conduct and that Amy struck Mr. Malachowski. Appellants were not present at the arraignment and allegedly were notified of it only by a phone call from Sergeant Brown ten minutes before it began. At the arraignment attorney David Park, who had been Amy's guardian ad litem in the earlier abuse and neglect proceeding, was appointed to represent her. Amy allegedly told him she did not want to return to her parents, and he agreed to a court order that she be temporarily detained in the Youth Development Center pending an adjudicatory hearing. At the adjudicatory hearing, held on September 11, 1984, with appellants present and Judge Richard J. Talbot presiding, Amy pleaded "chargeable" to the juvenile delinquency petition. The court ordered her temporarily placed in foster care with Youth Services, Inc. ("Y.S. I.") pending the dispositional hearing. At the dispositional hearing, held on October 11, 1984, with appellants present, the court ordered that Amy remain in the custody of Y.S.I., ordered family counselling, and scheduled a review for December 27, 1984.

Neither Amy nor appellants on her behalf filed an appeal from this dispositional order pursuant to N.H.R.S.A. 169–B:29. Nor did appellants petition the New Hampshire Supreme Court for a writ of certiorari to challenge it. See N.H.R.S.A. 490:4. Instead, on November 1, 1984, appellants brought the instant federal court action under § 1983, not on behalf of Amy but seeking redress for alleged violations of their own constitutional rights. Named as defendants—and appearing as appellees herein—were New Hampshire District Court Judges Hampsey and Talbot, Y.S.I. and its employee Richard Archibald, attorney David Park, the City of Keene and its Police Department, the city's prosecuting attorney Mark Bennett, Sergeant Brown, and Patrolman LaCoste.

In addition to various allegations directed at particular defendants, each of which we will discuss in turn below, appellants also attacked the legality of the Keene District Court proceedings themselves. Their primary allegations, insofar as they can be discerned from appellants' murky complaint, are that they were not given adequate notice of Amy's arraignment; they were not given notice until October 4, 1984, of the contents of the delinquency petition filed against Amy, in violation of N.H.R. S.A. 169–B:7 and *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); they were deprived of, and not given adequate

notice of, their right to retain counsel for Amy; they were not given a copy of Y.S.I. recommendations concerning Amy's custody before or during the dispositional hearing; they were not permitted access to the court records pertaining to Amy's case, in violation of N.H.R.S.A. 169–B:35; Amy was removed from their custody even though she was never actually adjudicated a delinquent, but pleaded "chargeable"; a finding of delinquency for use of foul language violated the First Amendment; and appellees acted with malicious intent pursuant to a conspiracy to manipulate the Keene District Court proceedings to deprive appellants of Amy's custody. The complaint sought compensatory and punitive damages against all defendants and also requested injunctive relief restoring Amy to appellants' custody, ordering that all juvenile delinquency charges against Amy be dropped, and barring any further attempts to interfere with appellants' custody.

Appellant Henry Malachowski then also filed on November 30, 1984, a petition for a writ of habeas corpus in the New Hampshire Supreme Court seeking to regain custody of Amy. The Supreme Court dismissed the petition without prejudice to appellant refiling it in the superior court, which apparently he has not done. A Keene District Court hearing to review Amy's disposition was held on December 27, 1984, with appellants present, but the court had not rendered a decision prior to the intervention of the district court below in the instant action.

On January 4, 1985, the district court (Loughlin, J.), following a January 2 hearing on pending motions, issued an order that Amy be restored to appellants' custody. Appellees Judges Hampsey and Talbot moved for a stay of this order, asking that Amy first be consulted. The district court granted the stay and, on January 8, granted appellees Judges Hampsey and Talbot's motion to dismiss all damage claims on grounds of judicial immunity; denied their motion as to appellants' claims for injunctive relief; granted appellee Y.S.I.'s motion to dismiss for lack of state action; and

dismissed appellee Richard Archibald for lack of service. On January 10, the district court interviewed Amy in chambers and, after finding that it would be detrimental to her well-being to be returned to appellants' custody, ruled on January 11 that it lacked subject matter jurisdiction and "remanded" the case to the Keene District court. Judgment was entered.

Subsequently, following numerous additional filings by appellants, the district court on February 5 further ordered that custody of Amy would be restored to appellants unless the Keene District Court held a hearing on or before February 15. That hearing was held on February 13, with appellants present, and resulted in an order by Judge Talbot continuing custody with Y.S.I. until June 30, 1985, with appellants to regain custody at that time unless Amy first requested a hearing. On March 26, 1985, the district court granted appellee Park's motion to dismiss and motion for summary judgment. Appellants then filed a notice of appeal in this court, which was dismissed as premature on May 14, 1985, because the case had not been finally resolved as to all parties. The district court then ruled on June 11 that "[a]ll of plaintiffs' actions not heretofore disposed of are dismissed because this court finds that it does not have jurisdiction." Appellants appealed. Appellants then also filed, on June 26, 1985, an appeal in the Cheshire County, New Hampshire Superior Court, which was dismissed as untimely.

## II. APPELLANTS' CLAIMS FOR INJUNCTIVE RELIEF.

Appellants' complaint prayed for the following injunctive relief: a permanent injunction restoring Amy to appellants' custody; withdrawal of the juvenile delinquency charges against Amy; and a permanent injunction barring appellees from future interference with appellants' custody of Amy. We interpret the district court's January 11 dismissal of these claims for lack of jurisdiction as a decision to abstain on the injunctive aspects of the case. We affirm.

■ As an initial matter, it appears that, so far as can be discerned from appellants' complaint, most, if not all, of appellants' objections to the Keene District Court proceedings involve alleged violations of New Hampshire law. These alleged faults in the state proceedings do not rise to the level of federal constitutional violations, actionable under § 1983. Mere alleged misuse or disregard of state law by state officials does not constitute a deprivation of property without constitutional due process of law. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Friends of Children, Inc. v. Matava,* 766 F.2d 35 (1st Cir.1985). Such deficiencies, if they exist, are readily and adequately correctable under state law in state court. We add that, insofar as the injunctive relief sought by appellants—ordering return of custody to appellants and withdrawal of the petition against Amy—would be tantamount to reversal of the Keene District Court's orders, "[t]he federal courts do not review state court civil proceedings under the guise of the Civil Rights Act." *Fortune v. Mulherrin,* 533 F.2d 21, 22 (1st Cir.), *cert. denied,* 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976).

As to any of appellants' objections to the state court proceedings not disposed of by the foregoing principles, we agree with the district court that abstention was appropriate. The Supreme Court has held, in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), that considerations of federalism and comity demand that a federal court should abstain from asserting jurisdiction, at least as to claims for injunctive or declaratory relief, over a matter that is the subject of pending state criminal proceedings. Federal court intervention can be countenanced only where a plaintiff can show there is no opportunity to raise the federal issues in a state court, a state statute under attack is "flagrantly and patently violative of express constitutional prohibitions in every clause," *id.* at 53–54, 91 S.Ct. at 755, or a plaintiff can show "bad faith, harassment, or any other

unusual circumstance that would call for equitable relief." *Id.* at 54, 91 S.Ct. at 755.

There is no question that *Younger* principles apply to the instant action. The Supreme Court has expanded the applicability of *Younger* to many categories of civil proceedings, including a state child custody action. *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). Whether the Keene District Court juvenile delinquency proceedings are characterized as quasi-criminal or as child custody proceedings, therefore, the propriety of federal interference with them must be judged by *Younger* standards. Insofar as appellants seek an order returning Amy to their custody, "the fact that 'family law' is at issue here makes 'abstention' particularly appropriate." *Friends of Children, Inc., supra,* 766 F.2d at 37.

■ Applying those standards, we find that the district court's abstention from asserting jurisdiction over appellants' injunctive claims was fully justified. Appellants filed the instant complaint in federal court on November 1, 1984, before the end of the 30–day period specified in N.H.R.S.A. 169–B:29 during which Amy, or perhaps appellants on Amy's behalf, could have appealed the October 11 dispositional order to the New Hampshire Superior Court. Even if appellants could not bring a direct appeal on their own behalf under that statute, they had open to them the option, with no express time limitation, of seeking a writ of certiorari from the New Hampshire Supreme Court to review the Keene District Court proceedings. N.H.R.S.A. 490:4. *See In re John M. and David C.,* 122 N.H. 1120, 1130, 454 A.2d 887 (1982). Under these circumstances, *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607–11, 95 S.Ct. 1200, 1209–11, 43 L.Ed.2d 482 (1975), *Younger* policies counsel abstention.

Furthermore, although N.H.R.S.A. 169–B:29 fixed the state district court's dispositional order as the only proper occasion for the minor's appeal as of right to the superior court for a de novo hearing—reflecting a legislative policy judgment that a right to

de novo review at any other point in juvenile delinquency proceedings is unnecessary, *see In re Cindy G.*, 124 N.H. 51, 58, 466 A.2d 943 (1983)—the district court juvenile delinquency proceedings were not finally concluded at that time. Instead, the district court retains jurisdiction and must review its disposition at least once annually. N.H.R.S.A. 169–B:31; *In re Cindy G.*, *supra*, 124 N.H. at 57–58, 466 A.2d 943. In the instant case the record reveals that the Keene District Court has reviewed Amy's disposition on at least two occasions following its initial dispositional order, on December 27, 1984, and on February 13, 1985. Appellants' filings herein indicate that appellants have presented further requests for a return of Amy's custody, or for other relief, to the Keene District Court on numerous occasions. At the time the district court dismissed appellants' injunctive claims, therefore, the Keene District Court still remained available as a local forum where appellants could press objections to Amy's custody.

Appellants have said nothing to suggest that this case falls within any of the exceptions recognized by *Younger*, exceptions which have been narrowly construed. *See United Books, Inc. v. Conte*, 739 F.2d 30, 34 (1st Cir.1984). There is, and can be, no allegation that the New Hampshire juvenile delinquency statute is flagrantly unconstitutional on its face. While appellants assert that they have been victims of a conspiracy in the state proceedings, they have pleaded no facts adequate to support that assertion. Nor does their loss of Amy's custody, which might prove temporary, constitute the sort of serious, imminent, and irreparable harm that conceivably might warrant extraordinary federal court intervention. We cannot doubt, therefore, that dismissal of appellants' claims for injunctive relief on *Younger* grounds was well within the district court's discretion. *See Friends of Children, Inc.*, *supra*, 766 F.2d at 37; *Allstate Insurance Co. v. Sabbagh*, 603 F.2d 228, 230 (1st Cir.1979).

Even apart from *Younger*, it is well-settled that, since the field of domestic relations involves local problems peculiarly suited to state regulation and control, a suit whose substance involves domestic relations cannot ordinarily be maintained in a federal court. *Friends of Children, Inc.*, *supra*, 766 F.2d 35; *Sutter v. Pitts*, 639 F.2d 842 (1st Cir.1981); *Donnelly v. Donnelly*, 515 F.2d 129 (1st Cir.), *cert. denied*, 423 U.S. 998, 96 S.Ct. 429, 46 L.Ed.2d 373 (1975); *Armstrong v. Armstrong*, 508 F.2d 348 (1st Cir.1974). Even assuming, *arguendo*, that a state juvenile delinquency proceeding, being a quasi-criminal action, does not fall strictly within the confines of this exception, courts have also recognized the broader principle that "a federal court may still decline jurisdiction if the action is 'on the verge' of the exception." *Bossom v. Bossom*, 551 F.2d 474, 475 (2d Cir.1976); *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir.1973). In the instant case, the injunctive aspects of appellants' complaint, while "clothed … in the garb of a civil rights action, … boil … down to a demand for custody of the child." *Sutter*, *supra*, 639 F.2d at 844. We could hardly conclude, therefore, that the district court abused its discretion in its decision to abstain on the injunctive aspects of appellants' complaint in order to avoid federal court interference in an area of predominant state concern.

As to certain appellees, *i.e.*, David Park and Y.S.I., appellants' claims for injunctive relief also were subject to dismissal, along with appellants' damages claims, for lack of the requisite state action. *See* section III (B), *infra*. We turn now to our review of the district court's dismissal of the damages claims.[1]

## III. APPELLANTS' CLAIMS FOR DAMAGES.

Unlike appellants' claims for injunctive relief, which were properly dismissed as to all appellees either for failure to state a

---

1. Appellants' claims for criminal sanctions under 18 U.S.C. §§ 241, 242 were properly dismissed in this civil action.

§ 1983 claim or by application of principles of abstention, appellants' claims for damages generally present discrete issues as to different appellees. Accordingly, we will discuss each in turn. Although for reasons already discussed in section II, pp. 7–8, *supra,* appellants may have failed to state a § 1983 damages claim against certain appellees, dismissal was appropriate as to each appellee for additional reasons.

### A. *Judges Hampsey and Talbot.*

■ The Supreme Court has established that a judge enjoys absolute immunity from damages claims arising out of actions taken in his judicial capacity unless "he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). The New Hampshire juvenile delinquency statute unequivocally grants appellees Judges Hampsey and Talbot, as New Hampshire District Court judges, jurisdiction over juvenile delinquency proceedings, N.H.R.S.A. 169–B:3, and jurisdiction to order juveniles to foster care. N.H.R.S.A. 169–B:14, 19. Appellants' claims for damages against Judges Hampsey and Talbot, accordingly, were properly dismissed.

### B. *David Park, Y.S.I., and Richard Archibald.*

■ Appellants' claims against appellees David Park, Y.S.I., and Y.S.I. employee Richard Archibald essentially boil down to the allegations that they made defamatory statements against appellants and joined in a conspiracy with other appellees to wrest Amy from appellants' custody without cause or justification. Archibald was properly dismissed from the case after appellants failed to serve him. The district court granted Park's motion to dismiss and motion for summary judgment and Y.S.I.'s motion to dismiss, finding that appellants' complaint did not allege sufficient facts to suggest they acted "under color of state law" for purposes of § 1983. We agree.

■ It is black-letter law that a showing of interference with a constitutionally-protected right by someone acting under color

of state law is a prerequisite to a § 1983 action. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Appellee Park, a private attorney, is sued for actions allegedly taken as court-appointed counsel for Amy in the Keene District Court proceedings. A private attorney who is sued for actions allegedly taken as court-appointed counsel does not act under color of state law. *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Page v. Sharpe,* 487 F.2d 567, 570 (1st Cir.1973).

■ The Supreme Court in *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), identified three factors guiding the determination whether an ostensibly private entity's conduct constitutes "state action" for purposes of § 1983:

> " '[T]here is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'

> . . . .

> [The state] "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.

> . . . .

> "[T]he private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.' "

*Id.* at 1004–05, 102 S.Ct. at 2786. Accepting all allegations of appellants' complaint, Y.S.I., a private, non-profit organization, made available foster homes for state agencies and provided recommendations to the juvenile court with respect to child placement. At no time did Y.S.I. assume the state's mantle of authority; decisions regarding Amy's disposition were the sole province of the Keene District Court. Appellants have not alleged that Y.S.I. was regulated or funded by, or under contract

with, the state of New Hampshire. Also, child care and placement is not traditionally the exclusive prerogative of the state. *Player v. State of Alabama Department of Pensions and Security,* 400 F.Supp. 249, 262 (M.D.Ala.1975), *aff'd,* 536 F.2d 1385 (5th Cir.1976). *See also Kelley v. Action for Boston Community Development,* 419 F.Supp. 511, 516–18 (D.Mass. 1976).

Appellants do allege that appellees Park and Y.S.I. acted in concert with state officials to deprive appellants of constitutional rights, a factor which would satisfy the "color of state law" requirement. *McGillicuddy v. Clements,* 746 F.2d 76 (1st Cir. 1984). However, appellants' allegations are bald and conclusory, and do not include sufficient factual detail to defeat a motion to dismiss. "[S]ome factual basis supporting the existence of a conspiracy must be pled when a conspiracy is alleged in a civil rights case." *Id.* at 77 (quoting *Glaros v. Perse,* 628 F.2d 679, 685 (1st Cir.1980)).

### C. *Mark Bennett.*

■ Appellants contend that appellee Mark Bennett, city attorney for the City of Keene, intruded upon their constitutional rights in the course of his participation as prosecutor in the Keene District Court proceedings. In his capacity as prosecutor, however, he is absolutely immune from a suit for damages under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Morrison v. Jones,* 607 F.2d 1269, 1273 (9th Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980) (prosecutor in juvenile court proceedings enjoys absolute immunity). While proper allegations of conspiracy could overcome the immunity, *see San Filippo v. U.S. Trust Co. of New York,* 737 F.2d 246, 256 (2d Cir.1984), appellants' allegations, again, are wanting.

### D. *City of Keene and City of Keene Police Department.*

■ A local governing body, such as a municipality or its police department, cannot be held liable in damages under § 1983 merely because it employs a tortfeasor. Rather, a local governing body can be sued directly under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulations or decision officially adopted and promulgated by that body's officers ... (or was taken) pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels." *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Voutour v. Vitale,* 761 F.2d 812 (1st Cir.1985). Since appellants have alleged no such city policy, practice, or custom, their claims against the City of Keene and its Police Department were properly dismissed.

### E. *Sergeant Brown.*

Appellants' claims against appellee Sergeant Brown are as follows: (1) that Brown informed appellants only at 8:50 a.m. on August 4, 1984, the day after Amy's arrest, that Amy's arraignment would occur at 9 a.m.; (2) that Brown falsely described the effects of Amy's arraignment to appellants; and (3) that Brown maliciously signed the juvenile delinquency petition against Amy with the knowledge that it was false (in that it charged Amy with striking Mr. Malachowski, which appellants deny).

■ The first two allegations do not rise to the level of federal constitutional violations. As to the first, while due process requires that parents receive adequate notice of the adjudicatory hearing, *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), it does not require immediate notice to parents, within twenty-four hours, of the filing of a delinquency petition. *See Holloway v. Wainwright,* 451 F.2d 149 (5th Cir.1971); *City of Claremont v. Truell,* 126 N.H. 30, 489 A.2d 581, 587 (1985). In any case, under N.H.R.S.A. 169–B:7 it is the responsibility of the Keene District Court, not Sergeant Brown, to notify a

minor's parents that a delinquency petition has been filed. As to the second, it does not appear that Brown's alleged summary of the potential consequences of Amy's arraignment was false. According to appellants' complaint, Brown told appellants that Amy would have no record and could be detained for only 21 days as a result of the arraignment. This is an accurate account of what the state juvenile delinquency statute provides. N.H.R.S.A. 169–B:13–14, 35.

■ Finally, Sergeant Brown enjoys absolute immunity from damages liability under § 1983 for his filing of an allegedly false delinquency petition against Amy. The Supreme Court has held that a police officer who testifies as a witness at a criminal trial enjoys absolute immunity from § 1983 damages liability for his testimony, based in part on his status "as an official performing a critical role in the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 336, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983). Under *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), a prosecutor is immune from a civil suit for damages under § 1983 "in initiating a prosecution and in presenting the State's case." The Court also has accorded absolute immunity to agency officials performing functions analogous to those of a prosecutor in *Butz v. Economou*, 438 U.S. 478, 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978), which held that executive officials are immune from damages under § 1983 "with respect to the initiation of administrative proceedings." Under these authorities, Sergeant Brown's initiation of juvenile delinquency proceedings in his capacity as a juvenile officer of the Keene Police Department cannot form the basis of § 1983 damages liability. Sergeant Brown's filing of the petition against Amy was not an "investigative" activity, but rather an activity "intimately associated with the judicial phase of the criminal process ... to which the reasons for absolute immunity apply with full force." *Imbler, supra,* 424 U.S. at 430, 96 S.Ct. at 995.

Several courts have applied the above principles to state proceedings concerned with the protection and welfare of juveniles. The Sixth Circuit, in *Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984), held that "state employees who are responsible for the prosecution of child neglect and delinquency petitions," including social services workers who played various roles in removing a child from his home into foster care, the child's guardian ad litem, and state psychologists whose findings were used by the juvenile court, enjoy absolute immunity under § 1983. The court reasoned that state officials with responsibility "to protect the health and well-being of the children of Michigan ... must be able to perform the necessary tasks to achieve this goal without the worry of intimidation and harassment from dissatisfied parents." *Id.* In *Walden v. Wishengrad,* 745 F.2d 149 (2d Cir.1984), the Second Circuit held that a Department of Social Services attorney who initiates and prosecutes child protective orders enjoyed absolute immunity from damages claims arising out of the performance of her duties. Finally, the Eighth Circuit in *Martin v. Aubuchon,* 623 F.2d 1282, 1285 (8th Cir.1980), accorded absolute immunity to the initiation of juvenile dependency and neglect proceedings by a county district attorney. *See also Pepper v. Alexander,* 599 F.Supp. 523, 526–27 (D.N.Mex.1984); *Whelehan v. County of Monroe,* 558 F.Supp. 1093 (W.D.N.Y.1983). We agree that a juvenile officer, such as Sergeant Brown, must be free from the threat of harassment and intimidation from parents in his decision to initiate juvenile delinquency proceedings.

Although Sergeant Brown's immunity may not extend to allegations that he filed a false delinquency petition as part of an overarching conspiracy with other appellees to deprive appellants of Amy's custody, appellants have not pleaded one shred of evidence in support of their conclusory allegations of conspiracy. *See Slotnick v. Garfinkle,* 632 F.2d 163, 165–66 (1st Cir. 1980).

Furthermore, even if Sergeant Brown did not enjoy absolute immunity, *cf. Malley v.*

*Briggs,* —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (police officer does not enjoy absolute immunity in submitting complaint and affidavit to procure an arrest warrant), appellants' allegation that Brown maliciously filed a false delinquency petition fails to state a claim under § 1983. It is well-settled that a § 1983 claim for deprivation of civil rights through malicious prosecution cannot be stated without an allegation that the prosecution terminated in a manner favorable to the accused. *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Tucker v. Duncan,* 499 F.2d 963 (4th Cir.1974); *Sullivan v. Choquette,* 420 F.2d 674 (1st Cir.1969), *cert. denied,* 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970). Since Amy pleaded "chargeable" and was adjudicated a delinquent on that basis, appellants' § 1983 claim cannot proceed. Accordingly, the district court's dismissal of appellants' claim against Brown was correct on this alternative ground.

### F. *Patrolman LaCoste.*

Appellants' claim against appellee Patrolman LaCoste is that on August 3, 1984, he entered their residence without a warrant and without their consent in order to take Amy into custody. As alleged by appellants in their complaint, and as further explained by appellants in a January 2, 1985, hearing in the district court, Mrs. Malachowski telephoned the Keene Police Department on August 3 to report that Amy had run away. When LaCoste arrived at the Malachowski residence in response to this call, Amy was already inside, Mr. Malachowski having located her and brought her home. LaCoste knocked on the kitchen door and was told by Mrs. Malachowski that Amy was inside. While at the open door he saw and heard Amy—apparently reacting to the sight of a policeman—erupt into a "tantrum" and direct foul and abusive language at Mr. Malachowski (appellants deny that Amy struck Mr. Malachowski). LaCoste thereupon entered the home and took Amy into custody.

Appellants, again, did not bring the instant action on Amy's behalf or for her benefit; they seek vindication for alleged deprivations of their own constitutional rights. We do not have before us, therefore, any claim that the manner of Amy's arrest violated Amy's rights under the Fourth Amendment—a matter appellants could not raise—but rather a claim that LaCoste's warrantless, nonconsensual entry into appellants' residence in order to effect the arrest violated appellants' Fourth Amendment rights. The district court dismissed appellants' claim against LaCoste for lack of jurisdiction. We affirm on the ground that, in light of LaCoste's qualified immunity from damages liability under § 1983, appellants failed to state a § 1983 claim against LaCoste. *See Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) (court of appeals can affirm on any ground presented by the record).

Even if appellants' complaint arguably could be said to allege conduct by LaCoste violative of the Fourth Amendment, *cf. Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), we agree that dismissal of appellants' claims against LaCoste was proper. On the face of appellants' allegations, LaCoste acted in good faith as a matter of law and, consequently, is immune from liability. It is well-settled that a police officer acting within the scope of his proper functions enjoys qualified immunity from § 1983 damages liability, so that he may not be held liable for good-faith conduct. *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court made it clear that the determination of a government official's good faith is a matter of objective inquiry, so that officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Under these principles a police officer is

"excus(ed) from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied." *Gomez v. Toledo,* 446 U.S. 635, 639, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Pierson, supra,* 386 U.S. at 555, 87 S.Ct. at 1218. This objective good-faith test permits resolution of questions of qualified immunity as a matter of law in appropriate cases. *Floyd v. Farrell,* 765 F.2d 1, 6 (1st Cir.1985).

In the instant case, LaCoste acted well within the scope of the powers expressly granted him under applicable New Hampshire statutes. LaCoste had adequate reason to believe that Amy's use of loud, abusive language, in the circumstances alleged by appellants, constituted disorderly conduct under N.H.R.S.A. 644:2 (III)(a) (a person is guilty of disorderly conduct if "he ... makes loud or unreasonable noises in a private place which can be heard in a public place or other private places, which noises would disturb a person of average sensibilities"). Given that Amy pleaded guilty and was adjudicated a delinquent on a charge of disorderly conduct, we are not disposed to find that LaCoste lacked probable cause to arrest her on that charge. In any case, LaCoste also had authority to take Amy into custody pursuant to N.H.R.S.A. 169–B:9, which provides that a police officer may immediately take into custody "any minor ... whose circumstances are such as to endanger his person or welfare, unless immediate action is taken." LaCoste unquestionably had adequate grounds to form a reasonable belief that Amy's welfare was endangered, given that Amy previously had been removed temporarily from appellants' custody following abuse and/or neglect proceedings, Amy allegedly had run away from home that same night, and Amy was in the midst of a "tantrum," directing foul language at Mr. Malachowski. Accordingly, we could not find that LaCoste lacked probable cause to take Amy into custody.

Although LaCoste entered appellants' residence without a warrant and without consent in order to make the arrest, N.H.R.S.A. 594:10(I)(a) expressly permits a police officer to make an arrest for an offense committed in his presence, as LaCoste did here. This statute states, "An arrest by a peace officer without a warrant on a charge of a misdemeanor or a violation is lawful whenever: (a) he has probable cause to believe that the person to be arrested has committed a misdemeanor or violation in his presence." As a matter of law, therefore, LaCoste acted in objective good faith, according to New Hampshire statutes, when he entered appellants' residence to take Amy into custody.

Even if we were to discern a constitutional infirmity in LaCoste's application of these state statutes to effect a warrantless home arrest, certainly LaCoste could not reasonably be expected to anticipate such a difficulty. There can be no claim that these state statutory provisions obviously are illegitimate on their face. LaCoste was entitled to act in accordance with governing state statutory law. Since he conformed his conduct to that law, LaCoste is immune from damages liability under § 1983.

The judgment of the district court is affirmed.