Hillsborough-northern judicial district
No. 95-285

*In re* THOMAS M. AND MICHAEL M.

May 23, 1996

*Daniel W. O'Shaughnessy*, of Manchester, by brief and orally, for the petitioner, Court Appointed Special Advocates of New Hampshire, Inc.

*Twomey & Sisti Law Offices*, of Chichester (*Jonathan R. Saxe* on the brief and orally), for the respondent, Thomas M., Sr.

*Jeffrey R. Howard*, attorney general (*Ann F. Larney*, assistant attorney general, on the brief and orally), for the State as *amicus curiae.*

JOHNSON, J. The respondent, Thomas M., Sr., appeals the Superior Court's (*Conboy*, J.) finding that he neglected his two minor sons, Thomas M. and Michael M., following his incarceration after his arrest for killing their mother. *See* RSA 169-C:3, XIX(c) (1994). The respondent also appeals the court's refusal to hold a dispositional hearing. *See* RSA 169-C:28 (1994). The petitioner is Court Appointed Special Advocates of New Hampshire, Inc. (CASA). We affirm the neglect finding but remand to the superior court for a *de novo* dispositional hearing.

On August 3, 1994, the respondent killed his children's mother. According to CASA, he stabbed her to death outside his mother's house as the children watched. He eventually pled guilty to the crime and is now incarcerated under a thirty-nine-year sentence.

The respondent was charged with first degree murder in August 1994 and ordered held without bail in the county house of correction. *See* RSA 597:1-c (Supp. 1995). The New Hampshire Division for Children, Youth, and Families (DCYF) then filed neglect petitions against him in the district court, citing his incarceration. *See* RSA 169-C:3, IX, XIX(c), :4, :7 (1994) (RSA 169-C:7 amended 1994). The district court appointed CASA to be guardian ad litem, *see* STATUTORY REQUIREMENTS AND GUIDELINES FOR THE PROCESSING AND DISPOSITION OF ABUSE AND NEGLECT CASES IN THE DISTRICT COURTS 11–13, and placed the children in temporary foster care, *see* RSA 169-C:15, :16 (1994) (amended 1994).

DCYF and the respondent agreed that the children should be placed with their grandmother, the respondent's mother, and DCYF withdrew its neglect petitions. CASA, however, refused to accede to this plan, *see* RSA 169-C:17, II (1994) (amended 1995), and filed neglect petitions of its own. The district court held hearings on CASA's petitions, made a finding of neglect, *see* RSA 169-C:18 (1994) (amended 1994), and issued a dispositional order requiring the evaluation of placement options, *see* RSA 169-C:19 (1994) (amended 1994). The court postponed determination of a final placement, maintaining temporary placement with the foster home.

Pursuant to RSA 169-C:28, the respondent appealed both the adjudicatory and the dispositional aspects of the district court's decision to the superior court. DCYF appealed the dispositional order as well but did not contest the district court's finding of neglect. The superior court held one hearing on the matter, informing the parties that "[w]e are here on the adjudicatory phase, not the dispositional phase at this point." The court did not allow litigation of the dispositional issue.

CASA executive director Marcia Sink testified that the respondent had had no contact with his children since his incarceration

began. Although the respondent objected to this testimony, he did not attempt to call Sink's statement into doubt during cross-examination. Instead, he claimed that a district court order had denied him any opportunity to contact his children. He has not, however, provided this court with a copy of the alleged order, and the district court has no record of such an order. *Cf. Brown v. Cathay Island, Inc.*, 125 N.H. 112, 115, 480 A.2d 43, 44 (1984) (appellant has burden of providing court with record sufficient to decide issue on appeal). On appeal, he does not dispute his lack of contact.

The superior court found, by a preponderance of the evidence, *see* RSA 169-C:13 (1994); *In re Tracy M.*, 137 N.H. 119, 124, 624 A.2d 963, 966 (1993), that the respondent neglected his children because of his incarceration, *see* RSA 169-C:3, XIX(c). It made no dispositional order, however, instead remanding that aspect of the matter to the district court. The respondent moved to reconsider the remand order. The superior court denied the motion, and he appealed to this court.

The respondent first contests the superior court's finding that he neglected his children. Our standard of review is as follows:

> Our practice is to sustain the findings and rulings of the trial court unless they are unsupported by the evidence or tainted by error of law. The court, which is the trier of fact, is in the best position to assess and weigh the evidence before it because it has the benefit of observing the parties and their witnesses. Consequently, our task is not to determine whether we would have found differently; rather, we determine whether a reasonable person could have found as the trial judge did.

*In re Tracy M.*, 137 N.H. at 125, 624 A.2d at 966 (quotation and citations omitted).

The superior court found that the respondent neglected his children within the meaning of RSA 169-C:3, XIX(c). That statute defines "neglected child" as a child "[w]hose parents, guardian or custodian are *unable to discharge their responsibilities to and for the child because of incarceration*, hospitalization or other physical or mental incapacity." (Emphasis added.) Other, alternative definitions of "neglected child" are found in RSA 169-C:3, XIX(a), (b) (1994).

■ Under RSA 169-C:3, XIX(c), a child of an incarcerated parent is not necessarily neglected. Rather, such a child is neglected only if the incarcerated parent is "unable to discharge [his or her] responsibilities to and for the child because of [the] incarceration."

There is no dispute on appeal that the respondent was incarcerated shortly after he killed the children's mother and remained so at the time of the superior court hearing. Thus, we must determine if the superior court erred in determining that he was unable to discharge his parental responsibilities because of that incarceration.

■ The respondent argues that this determination must be made with reference to RSA 169-C:3, XIX(b), one of the alternative definitions of "neglected child." This argument is unsupported by the plain language of RSA 169-C:3, XIX. *See* RSA 21:2 (1988); *cf. Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994) (when construing statute's meaning, court first examines statute's language, ascribing to words their plain and ordinary meanings where possible). RSA 169-C:3, XIX begins with the phrase, "'Neglected child' means a child:," followed by three subparagraphs describing differently situated children. At the end of subparagraph (b), preceding subparagraph (c), is the word "or." Thus, each subparagraph of RSA 169-C:3, XIX is, independently, a definition of "neglected child." *See Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984). If a court properly finds that a petitioner has proven the requirements of any *one* of the definitions, this court will sustain a finding of neglect.

■ We hold that the respondent's failure to have any contact with his children during his incarceration supports the superior court's finding that the respondent was "unable to discharge his parental responsibilities because of his incarceration." *See* RSA 169-C:3, XIX(c). As the superior court found,

> the Court cannot conclude that respondent's delegation of physical custody of the children to his mother is in fact an appropriate discharge of his parental responsibilities. Such responsibilities are not limited to physical care. They also include care for the children's emotional well-being. Under the extraordinary circumstances of this case, the Court finds that the respondent is unable to discharge his parental responsibilities because of his incarceration.

Parental responsibilities come in many forms, and some, we presume, may be discharged by delegation. Others require the active involvement of the child's "parent[], guardian, or custodian." RSA 169-C:3, XIX(c). Caring for a child's emotional well-being falls under the latter category. No doubt fulfillment of this obligation co-exists with periodic substitute care while the adult is temporarily separated from the child. But a parent, guardian, or custodian cannot pretend to discharge this responsibility during an extended

absence without some contact with the children in his or her care. *Cf.* RSA 170-C:5, I (1994) (if parent leaves child without communication for six months, parent is presumed to intend abandonment for purposes of terminating parent-child relationship). There is no dispute that by the time of the superior court hearing, the respondent had not communicated with his two sons for approximately six months.

The respondent next argues that the superior court erred in admitting evidence of a psychologist's report at the hearing. Because the circumstances surrounding the respondent's lack of contact with his children alone would have resulted, in any event, in the court's finding of neglect, we need not address this issue. The respondent raises other evidentiary arguments on appeal, but we decline to address them, as well. The arguments either lack sufficient merit to warrant discussion, *see Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993), or were not raised below, *see State v. VanDerHeyden,* 136 N.H. 277, 282, 615 A.2d 1246, 1249 (1992).

The respondent finally argues that the superior court erred in refusing to hold a *de novo* dispositional hearing pursuant to RSA 169-C:28. This statute reads:

> An appeal under this chapter may be taken to the superior court by the child or his authorized representative or any party having an interest, including the state, within 30 days of the final dispositional order; but an appeal shall not suspend the order or decision of the court unless the court so orders. *The superior court shall hear the matter de novo,* and shall give an appeal under this chapter priority on the court calendar. For purposes of this chapter, a "final dispositional order" includes a dismissal of a petition for abuse and neglect by the district court.

*Id.* (emphasis added).

■ We agree with the respondent that the superior court misinterpreted this statute. The statutory mandate that "[t]he superior court *shall* hear the matter de novo," *id.* (emphasis added), leaves no room for the exercise of discretion. The superior court *must* conduct a *de novo* hearing on "the matter." *Id.; cf. In re Robyn W.,* 124 N.H. 377, 379, 469 A.2d 1351, 1352 (1983) ("shall" denotes a mandatory statutory prescription). The term "the matter" refers to the issues addressed in both the adjudicatory finding and the dispositional order. RSA 169-C:28. The "final dispositional order," as the name implies, addresses the dispositional aspect of a neglect case. *See* RSA 169-C:3, XI, :21 (1994); *cf. In re Jessica J.,* 130 N.H.

625, 626, 546 A.2d 1056, 1056–57 (1988) (decided under prior version of RSA 169-C:28); *In re Cindy G.*, 124 N.H. 51, 56–59, 466 A.2d 943, 945–47 (1983) (interpreting provisions of RSA chapter 169-B and 169-D similar to RSA 169-C:28).

CASA argues that the superior court had the discretion to remand the dispositional aspect of the case to the district court without holding a *de novo* hearing. In support, CASA points to the following phrase in RSA 169-C:28: "[A]n appeal shall not suspend the order or decision of the *court* unless the *court* so orders." (Emphasis added.) CASA asserts in its brief that this provision "permit[s] the superior court to continue to keep the original dispositional orders of the district court in place not merely up to the de novo adjudicatory hearing but beyond it if it so desires." Thus, CASA assumes that the first use of the word "court" in the quoted phrase refers to the district court, whereas the second use refers to the superior court.

We find no support for this view. It seems implausible that the legislature would use the word "court" twice in one sentence and assign a different meaning to each use. *Cf. Rix v. Kinderworks Corp.*, 136 N.H. 548, 551, 618 A.2d 833, 834 (1992) (avoiding interpretation that would produce illogical result). Moreover, the word "court" is defined in RSA 169-C:3, IX as "the district court, unless otherwise indicated." Nothing in the quoted phrase or the rest of the statute indicates that the legislature intended the second use of the word "court" to refer to the superior court.

CASA also argues that the dispositional aspect of this case was not ripe for review by the superior court because the district court's dispositional order postponed determination of a final placement. According to CASA, this order was therefore not a "final dispositional order," as required by RSA 169-C:28. We disagree. The term "final dispositional order" is a term of art referring to the order of the district court following its dispositional hearing. *See* RSA 169-C:3, XI, :21; *cf. In re Jessica J.*, 130 N.H. at 626, 546 A.2d at 1056–57; *In re Cindy G.*, 124 N.H. at 56–59, 466 A.2d at 945–47.

We conclude that RSA 169-C:28 required the superior court to hear both the adjudicatory and dispositional aspects of this neglect case *de novo*. We therefore reverse the superior court's order remanding the dispositional issue to the district court and remand to the superior court for a *de novo* dispositional hearing.

*Affirmed in part; reversed in part; remanded.*

All concurred.