**Patrick SANDERS and Starlinda Sanders, Husband and Wife, Plaintiffs,**

v.

**Richard BUCH, M.D., et al., Defendants.**

**Civil No. 96–5116.**

United States District Court, W.D. Arkansas, Fayetteville Division.

Sept. 4, 1996.

Laura J. McKinnon, McKinnon Law Firm, Fayetteville, AR, for Plaintiffs.

Bruce E. Munson, Elizabeth Fletcher Rogers, Huckabay, Munson Rowlett & Tilley, Little Rock, AR, for Dr. Buch.

David M. Donovan, Laser, Sharp, Wilson, Bufford & Watts, Little Rock, AR, for Coram.

Walker Dale Garrett, Bassett Law Firm, Fayetteville, AR, for St. Paul.

Other parties as yet unrepresented.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a medical malpractice case which was removed to federal court on the basis of diversity jurisdiction. The plaintiff is currently a citizen of Arkansas. Defendant Richard Buch, M.D., is a citizen of Texas. Defendant Coram Health Care Corporation of North Texas is a Texas corporation with its principal place of business in Texas. These two defendants have now filed motions to dismiss this action asserting that the court lacks personal jurisdiction over them.[1]

---

1. Coram Health Care Corporation actually filed a motion joining the motion to dismiss filed by Dr. Buch.

*Background.*

Dr. Buch (Buch) practices Orthopedic Oncology in Dallas County, Texas. He first treated Patrick Sanders (Sanders) when he was admitted to the emergency room of a hospital in Dallas, Texas, on October 16, 1993. Buch operated on Sanders' right ankle. Sanders was injured while working for Fugro McClelland, a Dallas, Texas, corporation. Sanders home address at the time was Sachse, Texas.

Since Sanders injury was work-related, and approved as a workers' compensation injury, Buch's bills for services rendered were paid by Wausau Insurance in Irving, Texas. Buch continued to treat Sanders at his office and in various hospitals in Dallas, Texas. Between October of 1993 and September of 1994, Sanders was hospitalized six separate times. Each hospitalization occurred in a Dallas, Texas, hospital.

Wausau was advised of the need for home health services and on April 20, 1994, authorized the payment of these services through Continued Care Curaflex, a Dallas, Texas, corporation. While Sanders lived in Texas, intravenous therapy was administered by Coram Health Care Corporation. On May 10, 1994, Buch wrote orders for Home I.V. Infusion Therapy treatment which Sanders needed until his next office visit and next scheduled treatment in Texas. The orders covered the administration of various drugs and required "peak and trough" levels to be done every Friday and Wednesday with the results faxed to Buch.

In May of 1994, Sanders moved to Arkansas. When Sanders moved to Arkansas, Wausau authorized the provision of home health services by North Arkansas Medical Center. The patient referral and admission forms of North Arkansas Medical Center identify Buch as plaintiff's physician. When the initial intake was done, North Arkansas Medical Center called Buch's office for orders. The physician's orders and plan of care prepared by telephone on May 6, 1994, were subsequently confirmed and signed by Buch. Between May 6, 1994, and May 23, 1994, the home health agency provided treatment pursuant to Buch's orders and Buch signed various forms confirming his orders.

Buch did not contact North Arkansas Medical Center to provide these services and was not billed by North Arkansas Medial Center for the services. The only connection Buch had with the North Arkansas Medical Center was the fact that he wrote orders for home health treatment, the orders were discussed over the phone by Buch and his employees, and Buch received three written reports. Specifically, Buch states that

[i]n May of 1994, members of my office staff and I discussed Patrick Sanders' orders for home health treatment with employees of the Home Health Agency of North Arkansas Medical Center on the telephone approximately two times, and I received written reports dated May 6, May 17 and May 20, 1994 from the Home Health Agency of North Arkansas Medical Center.

Buch has never been in Western Grove or Newton County, Arkansas, never saw Sanders in the State of Arkansas, and does not do business or practice medicine in Arkansas. Buch last saw Sanders on December 21, 1994, in Buch's Dallas office.

The acts of malpractice alleged in the complaint are that Sanders did not receive monitoring of his blood levels for Gentamicin after he had been transferred to the care of North Arkansas Medical Center Home Care. Specifically, it is alleged that "Dr. Richard Buch, M.D. (sic) failed to order the Gentamicin peak and trough levels necessary to monitor the plaintiff's blood level." With respect to Coram Health Care Corporation it is alleged that it "failed to adequately transfer care of the plaintiff to North Arkansas Medical Center Home Care including transfer of orders for Gentamicin blood levels that plaintiff had been receiving." As a result of the alleged negligent acts, plaintiff states he suffered toxic levels of Gentamicin in his blood causing permanent damage to his vestibular nerve.

*Discussion.*

██ "[A] complaint should not be dismissed for want of jurisdiction, before trial, if there is any genuine issue as to any fact material to the jurisdictional question." *Radaszewski v. Telecom Corp.*, 981 F.2d 305,

309 (8th Cir.1992), *cert. denied,* 508 U.S. 908, 113 S.Ct. 2338, 124 L.Ed.2d 248 (1993). "While the facts adduced in a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction." *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211, 1215 (8th Cir.1977). *See also Dakota Industries, Inc. v. Ever Best Ltd.,* 28 F.3d 910, 915 (8th Cir.1994) (The nonmoving party need only make a prima facie showing of jurisdiction).

The Arkansas long-arm statute formerly provided certain listed bases for personal jurisdiction. Ark.Code Ann. § 16–4–101 (Repl.1994). The long-arm statute has been amended and now provides that "[t]he courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark.Code Ann. § 16–4–101(B) (Supp.1995).

Even before this amendment, Arkansas's long-arm statute had been interpreted to extend to the limits of federal due process. *Kilcrease v. Butler,* 293 Ark. 454, 455, 739 S.W.2d 139 (1987) (citations omitted). Thus the sole question is whether the exercise of personal jurisdiction is consistent with the due process clause. *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920, 921 (8th Cir.1995); *Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 612 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994).

■ "The test for due process is whether there are sufficient 'minimum contacts' between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with traditional notions of fair play and substantial justice." *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 654 (8th Cir.1982), *citing, World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's "reasonable anticipation," there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528–29 (8th Cir.1991) (citations and internal quotation marks omitted).

■ The Court of Appeals for the Eighth Circuit has determined that satisfaction of the due process standard may be measured by weighing the following factors: the nature and quality of defendant's contacts with the forum state; quantity of contacts; source and connection of the cause of action with those contacts; and, to a lesser degree, the interest of the forum state in providing a forum for its residents; and the convenience of the parties. *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir.1965). The focus of the inquiry is on the relationship "among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

As the Supreme Court has stated on more than one occasion, the determination of whether minimum contacts exist "is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. California Super. Ct.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (*quoting Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216–17, 92 L.Ed. 1561 (1948)).

■ Following the Supreme Court's decision in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d

404 (1984) the Eighth Circuit "elaborated on the third factor (the relationship of the cause of action to the contacts), distinguishing between specific jurisdiction and general jurisdiction." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994) (citation omitted).

> "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state," while "[g]eneral jurisdiction ... refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose."

*Id.* at 819 (citations omitted). "It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum." *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990).

■ Keeping these principles in mind, we turn first to an examination of the parties' arguments in light of Buch's contacts with the State of Arkansas. Buch argues that the use of the telephone, facsimile, and the post office to transmit orders for home therapy and receive reports from the home health care agency in Arkansas is simply not tantamount to transacting business in the State of Arkansas. In his view, these contacts are not the type of minimum contacts sufficient to allow an Arkansas court to exercise personal jurisdiction over an orthopedic surgeon who resides and practices in Texas. In short, Buch argues the only contacts he had with Arkansas were the result of the happenstance that his patient decided to move to Arkansas during the course of treatment.

First, plaintiff points out that this is a tort case not a contract case. Thus, the absence of a contractual or business relationship is not dispositive. Second, plaintiff points out that this malpractice case is premised on a series of acts and omissions by Buch and others that occurred in Arkansas over a period of at least three weeks. During this time, the only physician instructing the on-site provider was Buch.

Plaintiff contends "Buch knowingly participated in those acts or ratified their conduct by others on his behalf, and was aware that the acts were being accomplished in Arkansas." It is pointed out that Buch continued as Sanders' treating physician, corresponded with the home health agency in Arkansas, and authorized treatment. Thus, plaintiff states there is a substantial connection established between Buch and Arkansas.

It has been noted that "[i]n the context of doctor-patient litigation, special rules have evolved to ensure that personal jurisdiction is asserted over a doctor only when [he] has purposefully availed [himself] of the privileges of conducting activities within [his] patient's state." *Kennedy v. Freeman*, 919 F.2d 126, 129 (10th Cir.1990). These concerns generally arise when a doctor who has an essentially local practice negligently treats an out-of-state patient and the out-of-state patient upon returning home suffers injury. *Id.* Some courts have referred to these types of injuries or cases as "portable torts."

The case of *Wright v. Yackley*, 459 F.2d 287 (9th Cir.1972) provides a prime example of this type of case. In *Wright* the patient, Wright, while a resident of South Dakota was treated by Yackley. Wright was at Yackley's direction taking certain drugs acquired by prescriptions permitting unlimited refills. Wright then moved to Idaho and sought to have the prescriptions refilled on the basis of copies of the prescriptions issued by a South Dakota drugstore. The Idaho druggist advised Wright that he would only honor unlimited refill prescriptions if he received confirmation of the prescriptions from the doctor. Wright wrote Yackley, who at Wright's request, provided, without charge, copies of the original prescriptions. *Id.* at 288. Wright eventually brought a malpractice action in Idaho contending that she was injured by use of the drugs.

The Ninth Circuit found that the exercise of personal jurisdiction by an Idaho court would be contrary to constitutional principles of due process. The court noted:

> If [Yackley] was guilty of malpractice it was through acts of diagnosis and prescription performed in South Dakota. The mailing of the prescriptions to Idaho did not constitute new prescription. It was

not diagnosis and treatment by mail. It was simply confirmation of the old diagnosis and prescription and was recognized by the druggist as such. It did, of course, put the doctor on notice that consequences of his South Dakota services would be felt in Idaho and that it was by his very act of mailing that this would be made possible. In our view however, this does no more than put the doctor in the position of one who, in South Dakota, treats an Idaho resident with knowledge of her imminent return to Idaho and that his treatment thus may cause effects there.

*Id.* at 288–89.

In a footnote the court stated that

[t]he balance of factors involved in a due process determination might be different if a doctor could be said to have treated an out-of-state patient by mail or to have provided a new prescription or diagnosis in such fashion. In that event, the forum state's interest in deterring such interstate medical service would surely be great.

*Id.* at 289 n. 4.

In reality these special rules or concerns are nothing more than a recognition of the nature of the service being rendered. The focus is on a personal service rendered to the plaintiff rather than on a contractual arrangement or the marketing of a product. *See e.g., McGee v. Riekhof,* 442 F.Supp. 1276 (D. Mont.1978).

As the court in *Wright* noted, "[i]n the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's need." *Wright,* 459 F.2d at 289. "Medial services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state." *Id.* at 290.

In such cases, the *Wright* court identified the following as important considerations: "First, the amount of contact between defendant and forum state is determined by the chance occurrence of a resident of the forum state seeking treatment by the doctor while in the latter's state; Second, the nature of the contacts is normally grounded outside of any relationship with the forum state; Finally, the forum state's natural interest in the protection of its citizens is here countered by an interest in their access to medical services whenever needed." *Id.* at 290–91.

Jurisdiction has been held to exist when the nonresident doctors have purposefully directed their activities at the forum state such as soliciting business in the forum state or in some other manner directed his or her activities toward the forum state. *Kennedy,* 919 F.2d at 129. For instance, in *Kennedy* the doctor accepted a sample lesion from the forum state, signed a report establishing the thickness of the lesion, and sent a bill to the forum state. The court held that in effect, the doctor rendered his diagnosis through the mail knowing the diagnosis would form the basis of further treatment in the forum state. *Id.* Under those circumstances, personal jurisdiction existed. *See also Bullion v. Gillespie,* 895 F.2d 213 (5th Cir.1990) (California doctor subject to suit in Texas when doctor had solicited and enlisted volunteers for the consumption of experimental drugs); *Nicholas v. Ashraf,* 655 F.Supp. 1418 (W.D.Pa.1987) (accepting out-of-state referrals and out-of-state welfare reimbursement does not indicate purposeful availment); *Ghanem v. Kay,* 624 F.Supp. 23 (D.D.C.1984) (it is the actual practice of a profession not the possession of a right to practice that brings a person within the jurisdiction of the court); *McGee v. Riekhof,* 442 F.Supp. 1276 (D.Mont.1978) (act of Utah doctor providing new diagnosis (informing patient he could return to work) via telephone call subjected him to personal jurisdiction in Montana); *Howard v. Dooner Laboratories, Inc.,* 211 Mont. 312, 688 P.2d 279 (1984) (for venue purposes tort committed in county where doctor made his examination and diagnosis and prescribed medication rather than county in which patient ingested medication and suffered injury).

Here we conclude that Buch did not purposefully initiate activity within the forum state. He did nothing to invoke the benefits

and protections of Arkansas. The doctor-patient relationship was established in Texas, Sanders resided in Texas at the time the relationship was established, all visits and hospitalizations occurred in Texas, the request for home health care originated in Texas, and the "prescription" for home health care was written in Texas.

While the home health care was administered in Arkansas, this is true only because Sanders moved to Arkansas during the relevant period of time. Plaintiff has made no showing that Buch did anything more than confirm his orders regarding the care, respond to inquiries regarding the course of treatment, and receive reports regarding the same from Arkansas.

The fact that Buch responded to inquiries from North Arkansas Medical Center does not amount to purposeful availment. Buch was the plaintiff's treating physician. During the course of treatment, Sanders moved to Arkansas but continued to return to Texas for physician visits and periods of hospitalization. Obviously during this time period, Sanders needed and continued to receive medical treatment. Personal jurisdiction cannot be based on the activities of the plaintiff. Rather, defendant must have purposefully availed himself of the privilege of conducting activities in the state, thereby invoking the benefits and protections of the forum state's laws. Buch's motion to dismiss will be granted.

As we noted above, Coram Health Care Corporation of North Texas has joined in the motion to dismiss. It contends that any acts of omissions alleged against it occurred outside of Arkansas and its care and treatment of Sanders occurred solely in Texas. Plaintiffs have not filed a response to this motion to dismiss. We therefore have nothing before us that even suggests that Coram had minimum contacts with the State of Arkansas.

### Conclusion.

For the reasons stated, the motions to dismiss will be granted. A separate order in accordance herewith will be concurrently entered.