Hillsborough-northern judicial district
No. 96-709

WAYNE E. MOSIER, SR.

v.

DONALD KINLEY, M.D.

November 14, 1997

*Borofsky, Lewis & Amodeo-Vickery, P.A.*, of Manchester (*Christopher A. Bandazian* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*David C. Dunn* on the brief and orally), for the defendant.

JOHNSON, J. In this interlocutory appeal, *see* SUP. CT. R. 8, the defendant, Dr. Donald Kinley, M.D., appeals the decision of the Superior Court (*Lynn*, J.) denying the defendant's motion to dismiss for lack of personal jurisdiction. We reverse.

This case arises out of injuries allegedly sustained by the plaintiff, Wayne E. Mosier, Sr., in June 1985, after he was released from the emergency room at Brattleboro Memorial Hospital (hospital) in Brattleboro, Vermont. The plaintiff had been involved in a motorcycle accident in Brattleboro earlier that day and was brought to the hospital complaining of severe back pain. While there, the plaintiff asked to be transferred to a veterans administration hospital for treatment. The defendant, an orthopedic specialist, consulted by telephone with the attending emergency room physician regarding the plaintiff's release from the hospital. The plaintiff was subsequently released and placed in the back seat of a friend's car without immobilization for transport to a veterans administration hospital in Boston, Massachusetts. The plaintiff alleges that while traveling through New Hampshire en route to the veterans administration hospital, he suffered additional injury to his spine as a result of the improper immobilization allegedly authorized by the doctors and hospital.

The plaintiff filed suit in New Hampshire on May 15, 1991, alleging negligence on the part of the defendant, the hospital, and the emergency room physician. Following a series of procedural steps not relevant here, the superior court ruled that it has personal jurisdiction over the defendant. This interlocutory appeal followed.

In its order granting the defendant's motion to allow an interlocutory appeal, the superior court asked this court to determine whether a "defendant must . . . pursue an immediate interlocutory appeal of [the issue of personal jurisdiction] . . . on penalty that, if

he does not do so and instead raises his other defenses and proceeds to trial, he will be deemed to have waived his right to obtain supreme court review" of that issue. We ordered the parties to brief and argue both the issue of personal jurisdiction and the procedural question raised *sua sponte* by the superior court.

## I. In Personam Jurisdiction

■ The defendant argues that New Hampshire courts cannot properly exercise jurisdiction over him. "The plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendant." *Phelps v. Kingston*, 130 N.H. 166, 170, 536 A.2d 740, 742 (1987). Unlike the general rule applicable to motions to dismiss on the ground of failure to state a claim, "when jurisdictional facts are challenged, plaintiffs must not only plead facts sufficient to support jurisdiction, but must also go beyond the pleadings and make affirmative proof." *Brother Records v. HarperCollins Publishers*, 141 N.H. 322, 324, 682 A.2d 714, 716 (1996) (citation, quotation, and brackets omitted), *cert. denied*, 117 S. Ct. 1106 (1997). A *prima facie* showing of jurisdiction, however, will be sufficient to overcome a motion to dismiss. *Id.* at 325, 682 A.2d at 716.

In addition to the allegations recited above, the plaintiff alleged the following facts to support his claim of jurisdiction. Although the defendant has never been licensed to practice in New Hampshire, approximately fifteen percent of his total patient caseload is comprised of New Hampshire residents. The defendant regularly refers patients to New Hampshire medical service providers. Since 1980, he has accepted New Hampshire Medicaid patients and subscribers to New Hampshire Blue Cross/Blue Shield. During that same time period, the defendant employed twenty-two people, six of whom were New Hampshire residents.

The plaintiff also alleged contacts arising out of the defendant's position on the hospital staff. He argued that the defendant "was an agent, servant, employee and/or staff member" of the hospital, which itself has numerous New Hampshire contacts. The hospital has allegedly advertised its services in New Hampshire, specifically, in the Yellow Pages of the Keene-Peterborough phone book, and may have advertised in two New Hampshire newspapers. In addition, the hospital sponsored a series of short "public service" announcements that aired on Vermont radio stations reaching New Hampshire, and on one New Hampshire radio station. Between 1982 and 1990, the hospital treated over three thousand New Hampshire patients and

has referred patients to various New Hampshire health care providers.

■ The inquiry into a court's jurisdiction typically involves a two-part analysis. "Jurisdiction must be authorized, first, under the State's long-arm statute, and second, under the due process clause of the fourteenth amendment to the United States Constitution." *Brother Records*, 141 N.H. at 324, 682 A.2d at 715. New Hampshire's long-arm statute provides: "Any person who is not an inhabitant of this state and who . . . commits a tortious act within this state . . . submits himself . . . to the jurisdiction of the courts of this state." RSA 510:4, I (1997). We have held that "the fact that only the alleged injury occurred within the State does not preclude New Hampshire courts from subjecting a non-resident to their jurisdiction under the long-arm statute" so long as it was reasonably foreseeable that the injurious consequences would be felt here. *Phelps*, 130 N.H. at 173, 536 A.2d at 744 (quotation omitted). We agree with the trial court that because the defendant was aware that the plaintiff was being transported to a veterans administration hospital in Boston without immobilization, "it was reasonably foreseeable to Dr. Kinley that the plaintiff would travel through New Hampshire and could exacerbate his injury there." It was also foreseeable that the plaintiff might reach Boston by traveling through only Vermont and Massachusetts; however, that does not change the fact that it was *reasonably* foreseeable that the plaintiff would travel through New Hampshire.

We next determine whether the exercise of jurisdiction over the defendant would comport with the federal due process clause. "The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brother Records*, 141 N.H. at 324, 682 A.2d at 715 (quotations and ellipses omitted).

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The question before us is whether due process allows a consulting physician in Vermont to be haled into a New Hampshire court based on instructions provided to an emergency room doctor. "In the context of doctor-patient litigation, special rules have evolved to ensure that personal jurisdiction is asserted over a doctor only when [he] has purposefully availed [himself] of the privileges of conducting activities within [his] patient's state." *Kennedy v. Freeman*, 919 F.2d 126, 129 (10th Cir. 1990); *see, e.g., Hogan v. Johnson*, 692 P.2d 198, 201 (Wash. Ct. App. 1984) (noting that a number of jurisdictions follow rule that in medical malpractice context, "constitutional restrictions and policy considerations" may preclude jurisdiction even though tortious act was committed in forum). These special jurisdictional rules are grounded in the belief that it would violate the "notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted), embodied in the due process clause of the fourteenth amendment, *see id.*, to subject a nonresident physician with an essentially local practice to the jurisdiction of a foreign court based on the actions of an emergency room patient. *See, e.g., Beh v. Ostergard*, 657 F. Supp. 173, 177 (D.N.M. 1987). In fashioning these special jurisdictional rules, courts have recognized the fundamental difference between manufactured goods entering the stream of commerce and consumers of medical services. *See Glover v. Wagner*, 462 F. Supp. 308, 310-11 (D. Neb. 1978); *Hogan*, 692 P.2d at 201.

> While it is true that the nature of [medical] services is that if they are negligently done, their consequences will thereafter be felt wherever the . . . patient may go, it would be *fundamentally unfair* to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment. . . .

*Gelineau v. New York University Hospital*, 375 F. Supp. 661, 667 (D.N.J. 1974) (emphasis added) (holding that New Jersey had no jurisdiction over New York defendant who treated patient in New York); *see Wright v. Yackley*, 459 F.2d 287, 290 (9th Cir. 1972) (distinguishing nonresident doctor's activities from "voluntary, interstate economic activity . . . which is directed at various states in order to benefit from effects sought in those states"). Courts have applied these special jurisdictional rules even when it was foreseeable that the patient would travel to the forum jurisdiction. *See, e.g.,*

*Kennedy v. Ziesmann*, 526 F. Supp. 1328, 1332 (E.D. Ky. 1981) (unconstitutionally unfair to submit Ohio doctor to jurisdiction of Kentucky courts although foreseeable that effect would be felt in forum); *Hogan*, 692 P.2d at 202 (fact that it is foreseeable that plaintiff would travel to forum is insufficient).

Furthermore, many courts have found that adoption of this rule is in the best interest of their citizens.

> The idea that tortious rendition of [medical] services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it.

*Wright*, 459 F.2d at 289-90; *see, e.g., Sanders v. Buch*, 938 F. Supp. 532, 537 (W.D. Ark. 1996).

 Consequently, to defeat a motion to dismiss based on lack of personal jurisdiction, a plaintiff must plead contacts other than those arising from the act of treating the emergency room patient that are sufficient to justify this State's exercise of jurisdiction. *See Beh*, 657 F. Supp at 177. The essential element of the analysis is whether the physician purposefully directed his activities toward the forum State such that it would be fair under the due process clause to subject that physician to the forum's jurisdiction. *See, e.g., Kennedy v. Freeman*, 919 F.2d at 129; *Sanders*, 938 F. Supp. at 537-38.

 Applying this analytical framework to the case at bar, we hold that the facts pled by the plaintiff were insufficient to justify the exercise of *in personam* jurisdiction over the defendant. First, jurisdiction over the defendant is not warranted simply because some of the defendant's patients are New Hampshire residents and the defendant has accepted payments from New Hampshire insurance and medicare providers. As noted above, the fact that residents of a forum travel to a nonresident physician for treatment alone is not sufficient to show that the physician directed his activities to attract patients from the forum. *See Nicholas v. Ashraf*, 655 F. Supp. 1418, 1419 (W.D. Pa. 1987) (acceptance of referrals from forum is not sufficient to establish jurisdiction); *Soares v. Roberts*, 417 F. Supp. 304, 307 (D.R.I. 1976) (treating patient "without taking any action to

solicit [patient's] case" is not sufficient to establish jurisdiction); *Phelps*, 130 N.H. at 173-74, 536 A.2d at 744. Furthermore, acceptance of payments from out-of-state insurance companies and out-of-state welfare agencies is not sufficient to show that the physician purposefully availed himself of the privilege of conducting activities within the forum State. *See Nicholas*, 655 F. Supp. at 1419 (declining to find jurisdiction over West Virginia doctors who accepted reimbursement from Pennsylvania welfare department); *Almeida v. Radovsky*, 506 A.2d 1373, 1375-76 (R.I. 1986) (declining to find jurisdiction over Massachusetts doctors who accepted payments from Rhode Island insurance provider). *But see Kenerson v. Stevenson*, 604 F. Supp. 792, 795 (D. Me. 1985). It would be unfair to subject a physician to the jurisdiction of a foreign State simply because that physician accepted payment from a public or private insurer in the foreign State for services provided in the physician's home State.

Secondly, the mere fact that the defendant employed some New Hampshire residents and made referrals to New Hampshire medical providers is not indicative of a contact directed toward attracting New Hampshire patients to his practice. *See Gelineau*, 375 F. Supp. at 666 (employing forum residents not indicative of purposeful availment); *cf. Soares v. Roberts*, 417 F. Supp. at 307 (forum lacked jurisdiction where doctor took no action to solicit patient's case).

Thirdly, the defendant's status as a hospital staff member does not require that we include in our analysis the hospital's own contacts with the forum. *Cf. Calder v. Jones*, 465 U.S. 783, 790 (1984) (individual defendants' contacts with forum are not to be judged according to employer's activities there). "Each defendant's contacts with the forum State must be assessed individually." *Id.* Furthermore, finding jurisdiction over a nonresident defendant doctor because of his affiliation with a foreign hospital would "turn[] the principal-agent concept on its head." *Soares*, 417 F. Supp. at 307. Although use of the hospital's contacts with New Hampshire would be appropriate in an analysis of jurisdiction over the hospital itself, the hospital's "corporate activities cannot be used to establish minimum contacts of a nonresident corporate agent who did not participate in the forum activities in any respect." *Id.*

Our holding today comports with our decision in *Phelps*, 130 N.H. 166, 536 A.2d 740. There we held that New Hampshire courts could exercise personal jurisdiction over a Maine dentist, practicing in that State, in a malpractice action where the injury occurred in New Hampshire. *Id.* at 175, 536 A.2d at 745. We were careful to emphasize that we did not hold that the defendant's negligent

conduct by itself could confer jurisdiction because the plaintiff was a New Hampshire resident. *Id.* at 173, 536 A.2d at 744. Instead "it is the totality of his contacts with New Hampshire that determines that he is subject to suit in New Hampshire." *Id.* at 174, 536 A.2d at 744. We found jurisdiction because the plaintiff in *Phelps* was "of the type that defendant's forum contacts sought to attract." *Id.*

Moreover, the defendant's contacts in *Phelps* were more significant than those alleged in the present case. The defendant in *Phelps* had practiced in New Hampshire and continued to hold a valid dental license here. *Id.* at 173, 536 A.2d at 744. He also had placed an advertisement in the Yellow Pages that were circulated in the Portsmouth area. *Id.* at 173-74, 536 A.2d at 744. We were careful to distinguish the plaintiff in that case, Nancy Phelps, from plaintiffs like Mr. Mosier by stating that "[t]he defendant, through various means, purposely sought and made himself attractive to New Hampshire residents who, in the ordinary course of their day-to-day activities, found it necessary to seek a [doctor] possessing particular skills." *Id.* at 174, 536 A.2d at 744. Unlike the plaintiff in this case, the plaintiff in *Phelps* did not "arrive[] on [the defendant's] doorstep solely by happenstance. She was precisely the type of person whose business the defendant actively sought to obtain." *Id.*

Although we have held in other contexts that "[w]hen a nonresident defendant performs allegedly tortious acts in New Hampshire, little doubt clouds a finding that New Hampshire has jurisdiction," *Brother Records*, 141 N.H. at 325, 682 A.2d at 716 (quotation omitted), in the context of doctor-patient relationships, the plaintiff must plead additional facts to justify the exercise of jurisdiction over a nonresident defendant. *See Hogan*, 692 P.2d at 201-03. Because the plaintiff failed to meet his burden of establishing jurisdiction over the defendant, we reverse the trial court's ruling that New Hampshire has personal jurisdiction over the defendant.

## II. Appellate Procedure

In response to the superior court's request, we ordered the parties to brief the following question:

> Whether a defendant who has challenged the trial court's personal jurisdiction over him must pursue an immediate appeal to the supreme court or be deemed to have waived the issue of personal jurisdiction?

We hold that a defendant must seek an immediate appeal or waive the ability to later attack the trial court's ruling on personal jurisdiction. "[I]t is essential that [jurisdictional] issue[s] be fully

litigated before the case continues. The issue of jurisdiction is not only separate, but also preliminary, and reasonable procedure demands that it be finally decided before other issues of the litigation are reached." *Morel v. Marable*, 120 N.H. 192, 193-94, 412 A.2d 747, 748 (1980) (quotation omitted). Furthermore, it would be unfair to force a defendant to expend the time and resources necessary to mount a defense on the merits if the court has no personal jurisdiction over the defendant.

■ We also hold that henceforth appeals from a denial of a motion to dismiss based on *in personam* jurisdiction will be governed by Supreme Court Rule 7. We will not require defendants challenging the personal jurisdiction of the court to receive the signature of the presiding judge before pursuing an interlocutory appeal. *See* SUP. CT. R. 8(1)(d). Of course, we retain the discretion, under Rule 7, to decline to accept any such appeal. *See* SUP. CT. R. 7.

*Reversed.*

All concurred.