Brew v. Ferraro                              CV-95-615-JD  10/15/98
                 UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE

Mary J. Brew

        v.                              Civil No. 95-615-JD

Thomas Ferraro, M.D., et al.


                              O R D E R


     The plaintiff, Mary Brew, brought this action asserting,

inter alia, claims for medical malpractice and intentional

infliction of emotional distress against the defendants Dr.

Thomas Ferraro, Dr. Guy Leadbetter, and Concord Urology, P.A.

("Concord Urology").  On June 3, 1996, defendant Leadbetter

("Leadbetter") moved to dismiss the plaintiff's claims against

him for lack of personal jurisdiction.  On October 16, 1996, the

court denied Leadbetter's motion to dismiss, provisionally

finding that exercise of jurisdiction over Leadbetter would

comport with the Due Process Clause and the New Hampshire long

arm statute.  Before the court now is Leadbetter's renewed motion

to dismiss for lack of personal jurisdiction (document no. 61).


                             Background[1]

     The court incorporates by reference the facts related in the

October 16, 1996 order addressing personal jurisdiction with

_____

        [1]The facts discussed herein are alleged by the plaintiff,
are reasonable inferences from such allegations, or are
undisputed, unless otherwise noted.

respect to Dr. Leadbetter.  See Brew v. Ferraro, 95-615-JD, slip op. at 1-5 (D.N.H. Oct. 16, 1996) ("Order").  It recounts, however, conduct that it finds pertinent to the personal jurisdiction inquiry.

In June 1963, Ferraro, who practiced in New Hampshire, referred the plaintiff, who lived in New Hampshire, to Leadbetter, who practiced in Massachusetts.  After an initial consultation in Boston, at which Leadbetter placed the plaintiff on a six-month regimen of drug therapy, the plaintiff returned to Massachusetts for additional treatment by Leadbetter in July 1964.  At this point in time Leadbetter performed a new surgical procedure on the plaintiff that he had only performed several times before.  Since the operations, few patients have had to return to be treated by Leadbetter.  After a twenty-three day stay in the hospital in Massachusetts, the plaintiff returned to New Hampshire.  On March 26, 1965, the plaintiff returned to Massachusetts for a routine post-operative procedure that Leadbetter had prescribed.

Medical records indicate that Leadbetter and Ferraro consulted by telephone, presumably from Massachusetts to New Hampshire, regarding the plaintiff's treatment on February 2, 1966, and that Leadbetter suggested treatment with tetracycline. Ferraro followed Leadbetter's recommendations, treating the plaintiff in New Hampshire.  Medical records from August 4, 1968,

2

indicate that Ferraro again consulted with Leadbetter regarding the plaintiff's condition, and that Leadbetter suggested bi-monthly dilatations. Medical records further indicate that these dilatations were administered in New Hampshire. In the winter of 1968 Ferraro again referred the plaintiff for treatment to Leadbetter, who saw the plaintiff in Vermont.

In 1973, the plaintiff was referred to Leadbetter in Boston. In December 1974, the plaintiff was treated by Leadbetter in Vermont when he put her on an unspecified treatment program which was apparently administered in New Hampshire. Medical records also indicate that in 1975 Leadbetter treated the plaintiff in New Hampshire.[2] At this visit, Leadbetter suggested repeated dilatations and a "crede maneuver." Medical records indicate that she underwent this procedure on a "Recovery Room" basis in New Hampshire.

---

[2]Ferraro's medical records indicate that Leadbetter saw the plaintiff in New Hampshire. See Pl.'s Opp'n to Dr. Leadbetter's Mot. to Dismiss for Lack of Personal Jurisdiction, App. at Ex. 16 ("She was seen here by Dr. Leadbetter of Burlington, Vermont who suggested repeat dilatations and a crede maneuver."). However, in the plaintiff's affidavit of June 19, 1996, the plaintiff states that she does not recall ever being seen by Leadbetter in New Hampshire. See Pl.'s Aff. at 2 (June 19, 1996). In an excerpted portion of Francis Brew's deposition, Francis Brew states that Mary never saw Leadbetter in New Hampshire. Francis Brew Dep. Vol. II, p. 24 (July 9, 1997). The court resolves the conflict in favor of the plaintiff. See Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992) ("[I]n determining whether a prima facie showing has been made, the district court is not acting as a factfinder. It accepts properly supported proffers of evidence by a plaintiff as true.").

The plaintiff saw Ferraro again in April 1975.  Medical records indicate that Ferraro decided to present the plaintiff's situation to Leadbetter.  Leadbetter therefore saw the plaintiff in Burlington, Vermont, in July of 1975.  Leadbetter recommended that she be taught self-catheterization and begin a program of self-catheterization.  She returned to New Hampshire and saw Ferraro for evaluation and training on self-catheterization.  Thereafter, the plaintiff underwent self-catheterization in New Hampshire as recommended by Leadbetter.

Discussion

The plaintiff has the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendants.  See United Elec., Radio and Machine Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1090 (1st Cir. 1992), rev'd on other grounds, 987 F.2d 39 (1st Cir. Mar. 3, 1993) ("United Elec. I"); Concord Labs., Inc. v. Ballard Medical Prods., 701 F. Supp. 272, 274 (D.N.H. 1988); Velcro Group Corp. v. Billarant, 692 F. Supp. 1443, 1446 (D.N.H. 1988).  Employing the prima facie analysis for determining personal jurisdiction, the court takes "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and contrue[s] them in the light most

4

congenial to the plaintiff's jurisdictional claim."[3]
Massachusetts School of Law at Andover, Inc. v. American Bar
Ass'n., 142 F.3d 26, 34 (1st Cir. 1998). The court then adds "to
the mix facts put forward by the defendants, to the extent that
they are uncontradicted." Id. In addition, the court construes
all reasonable inferences in favor of the plaintiff. Velcro
Group, 692 F. Supp. at 1446.

Upon development of the record, the court does not find that
defendant Leadbetter exercised the requisite amount of control
over Ferraro to establish an agency relationship, nor was there
any manifestation of such intent. See Restatement (Second) of
Agency §§ 1, 14 (1958). However, the court nevertheless
concludes that Leadbetter had sufficient minimum contacts with
New Hampshire in his course of treatment of the plaintiff to
assert specific personal jurisdiction over him consistent with
constitutional requirements.[4]

---

[3]The parties do not request a hearing on the issue of
personal jurisdiction, nor is the record "rife with
contradictions." Boit, 967 F.2d at 676.

[4]As discussed more fully in its October 16, 1996 order, the
court's inquiry turns on an analysis of due process requirements
as the New Hampshire long-arm statute has been interpreted to
reach to the full extent that statutory language and the due
process clause allows, see Brew v. Ferraro, 95-615-JD slip op. at
7 n.5 (D.N.H. Oct. 16, 1996); see also, N.H. Rev. Stat. Ann.
§ 510:4 (1983); Phelps v. Kingston, 130 N.H. 166, 171 (1987), and
in any event, Leadbetter does not dispute the effect of the
statutory language in his renewed motion to dismiss for lack of
personal jurisdiction.

The First Circuit uses a tripartite analysis to determine whether exercising specific personal jurisdiction over a defendant comports with the Due Process Clause. Ticketmaster -- New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994); United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The court first inquires whether the plaintiff's claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activity. Ticketmaster, 26 F.3d at 206. Such activity must be an important or material element of proof of the plaintiff's case. United Elec. Workers, 960 F.2d at 1089. The inquiry requires a showing of both cause in fact and legal cause, i.e., but-for causation and proximate causation. See Mass School of Law, 142 F.3d at 35. The court next inquires whether "the defendant's in-state contacts . . . represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." United Elec. Workers, 960 F.2d at 1089. Finally, the court inquires whether exercising jurisdiction would comport with fair play and substantial justice. See Ticketmaster, 26 F.3d at 209-10. In this inquiry the court considers five "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum
> state's interest in adjudicating the dispute, (3) the

6

> plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest in
> obtaining the most effective resolution of the
> controversy, and (5) the common interests of all
> sovereigns in promoting substantive social policies.

Ticketmaster, 26 F.3d at 209-10.


A.  Relatedness

The plaintiff asserts an informed consent claim, a malpractice claim for failure to provide adequate post-operative care, and a malpractice claim for mis-diagnosis and treatment, pursuant to New Hampshire Rev. Stat. Ann. § 507-E (1997) ("RSA"). The plaintiff also asserts claims for the infliction of emotional distress arising from breaches of duties identified RSA § 507-E. The failure to disclose certain information allegedly resulted in the plaintiff's inability to adequately consider medical options or otherwise revise her medical treatment, which was primarily provided in New Hampshire.  It also allegedly resulted in treatment, primarily provided in New Hampshire, that was unnecessarily painful and injurious to the plaintiff.

Leadbetter treated the plaintiff in New Hampshire only once. However, Leadbetter repeatedly either consulted with Ferraro, recommending post-operative care to be carried out in New Hampshire, or after seeing the plaintiff, prescribed or recommended treatment that he knew or should have known would be performed in New Hampshire.  While Ferraro was not acting as

7

Leadbetter's agent in administering the treatments, Leadbetter prescribed or recommended treatments to be performed in New Hampshire on a New Hampshire patient, by a New Hampshire doctor. Leadbetter's treatment of the plaintiff on a number of occasions through recommendations he knew would be carried out in New Hampshire, together with his treatment of the plaintiff on one occasion in New Hampshire, represent contacts with New Hampshire that have a legal causal relation to the plaintiff's claims.

B. Purposeful Availment

The "[f]unction of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (quotations and citations omitted). The First Circuit's analysis of purposeful availment considers the voluntariness of the defendant's relevant actions, and whether the court's exercise of jurisdiction over the defendant would be foreseeable. See id., 70 F.3d at 1391-94.

Leadbetter accepted a patient whom he knew or should have known was a New Hampshire resident for a new experimental surgery. He then continued to treat the patient over eleven years, seeing the patient in Massachusetts, Vermont, and on one occasion, New Hampshire. He prescribed certain treatments and

8

communicated them directly to a New Hampshire doctor who performed the treatments in New Hampshire. He also received payments from a New Hampshire insurer. This reflects a voluntary engagement with New Hampshire to profit from business that arose out of that state. On the other hand, the court finds it significant that Leadbetter did not initiate contact with the plaintiff, but that the plaintiff was the one who repeatedly sought the services of Leadbetter.

"The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when that defendant has established a continuing obligation between [him]self and the forum state." Id. at 1393. Again, Leadbetter performed a new surgery on a New Hampshire resident whom he accepted for treatment. After the procedure, he treated the plaintiff repeatedly in out-of-state visits and one in-state visit. Recommendations were made for medical services to be performed in New Hampshire by a New Hampshire doctor on a New Hampshire resident. Such prescribed and recommended treatments were communicated directly to the New Hampshire doctor, although they were perhaps communicated through the plaintiff's parents as well. This continued over approximately eleven years.[5]

_____

[5]Leadbetter argues, in a different context, that he did not expect to develop a long-term post-operative treatment relationship, and that in actuality few patients did return for extended further treatment. However, the facts belie his expectations. The court does not find Leadbetter's subjective expectations to be dispositive, nor to be reasonable, as the

9

Leadbetter's treatment of the plaintiff and his contacts with New Hampshire which resulted from this ongoing doctor-patient relationship cannot be deemed "random, isolated, and fortuitous." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984). Being haled into court in the state where the plaintiff lived and where the allegedly negligent treatments occurred, through his recommendations and as a result of his alleged failure to disclose information, over an extended period of time, and where he saw the plaintiff once, is foreseeable.

C.  Gestalt Factors

Analysis of the gestalt factors requires consideration of the defendant's burden of appearing in New Hampshire and the interests of, among others, the plaintiff, the forum state, the judicial system generally, and the sovereigns' interest in promoting substantive social policies. Leadbetter is a resident of Vermont. Appearing in New Hampshire is not unusually or especially burdensome, see Sawtelle, 70 F.3d at 1395, and in any event, it may be less burdensome than appearing in Massachusetts.

New Hampshire has a strong interest in providing redress to its residents. New Hampshire also has a competing interest in

---

surgery was experimental and complications could be expected which required follow-up treatment. Indeed, the plaintiff presented just such a case.

10

encouraging out-of-state doctors to provide care to New Hampshire patients which could be defeated by the assertion of personal jurisdiction over such doctors. However, this concern is mitigated in part by the financial incentives for providing such care.

The plaintiff's interest in obtaining convenient and effective relief favors the exercise of jurisdiction as the plaintiff would otherwise be relegated to maintaining two actions in two states. This consideration is relevant to the fourth factor as well, the judicial system's interest in efficiency. Finally, the fifth factor is in equipoise, balanced between the forum state's interest in encouraging out-of-state physicians to treat its residents, supporting the free flow of information between treating physicians, and the need to provide redress for its residents when the care is negligent.

Leadbetter relies on Mosier v. Kinley, 142 N.H. 415 (1997), to argue that special jurisdictional rules are applicable to doctor-patient litigation, as a result of policy and constitutional concerns particular to situations involving a doctor-patient relationship. The court recognizes and has considered New Hampshire's interest in encouraging treatment of its residents by out-of-state doctors and in facilitating the exchange of information between doctors. Moreover, the court finds that Mosier does not compel a particular outcome in this

11

case.  Leadbetter's contacts with New Hampshire were more extensive and of a different nature than the defendant doctor's in Mosier.  See 142 N.H. at 417, 420-22 (no jurisdiction in New Hampshire where Vermont doctor conferred by telephone with Vermont hospital emergency room on whether patient could be transported to Massachusetts, and plaintiff allegedly suffered additional injuries in transport through New Hampshire).

Conclusion

In light of the above discussion, the court finds that the exercise of specific personal jurisdiction over Leadbetter is warranted.  Leadbetter's renewed motion to dismiss for lack of personal jurisdiction (document no. 61) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

October 15, 1998

cc:   Robert A. Backus, Esquire
      John Traficonte, Esquire
      Jody Sheets, Esquire
      Michael R. Callahan, Esquire
      John E. Friberg, Esquire
      Ronald L. Snow, Esquire
      William D. Pandolph, Esquire

12