NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

1st Circuit Court-Colebrook Family Division
Case No. 2024-0287
Citation: In re J.M., 2024 N.H. 70

IN RE J.M.

Argued: October 30, 2024
Opinion Issued: December 20, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Robyn A. Guarino, attorney, on the memorandum of law and orally), for the New Hampshire Division for Children, Youth and Families.

The Young Law Firm, of Conway (Robert Young on the brief and orally), for the father.

BASSETT, J.

[¶1] The respondent, the father of J.M. (Father), appeals an order of the Circuit Court (Cabrera, J.) denying his motion to dismiss an RSA chapter 169-C neglect petition for lack of personal jurisdiction due to defective service of process.  He also appeals orders of the Circuit Court (Subers, J.) finding that he neglected J.M. and requiring J.M.'s out-of-home placement.  Because Father did not immediately appeal the denial of his motion to dismiss for inadequate service of process and instead participated in the adjudicatory hearing, we

deem his service of process challenge waived under Mosier v. Kinley, 142 N.H. 415, 423-24 (1997). We also conclude that there is sufficient evidence in the record supporting the trial court's neglect finding and placement decision and, accordingly, we affirm.

[¶2] The following facts are supported by the record or are undisputed. In January 2024, the New Hampshire Division for Children, Youth and Families (DCYF) received a referral regarding J.M. because J.M.'s mother (Mother) had passed away, leaving J.M. without a caretaker. DCYF contacted Father, who was living in Florida at the time and who had not seen J.M. for over a year. Shortly thereafter, DCYF filed a petition pursuant to RSA chapter 169-C regarding J.M., alleging neglect by Father. See RSA 169-C:3, XIX (2022).

[¶3] In February 2024, Father was served with the neglect petition in Florida by a process server. He then moved to dismiss the neglect petition for lack of personal jurisdiction, arguing that service upon him was defective because he was not served with the petition by a law enforcement officer as required by RSA 169-C:8, I (2022). See Estate of Lunt v. Gaylor, 150 N.H. 96, 97 (2003) ("Proper service of process is a necessary prerequisite to obtaining jurisdiction over an out-of-state defendant." (quotation omitted)). The court denied Father's motion, and the parties proceeded with the adjudicatory hearing in March. The trial court found Father had neglected J.M. Following the dispositional hearing, the trial court continued J.M.'s out-of-home placement. This appeal followed.

[¶4] Father first argues that the trial court erred when it denied his motion to dismiss for lack of personal jurisdiction due to defective service of process under RSA 169-C:8, I.[1] DCYF counters that, under Mosier v. Kinley, 142 N.H. 415 (1997), Father waived this challenge by failing to immediately appeal the trial court's order denying his motion to dismiss. We agree with DCYF that Mosier controls.

[¶5] In Mosier, we held that when a party has unsuccessfully challenged the trial court's exercise of personal jurisdiction over her or him, the party must pursue an immediate appeal of the trial court's decision or waive the ability to later attack the court's ruling on personal jurisdiction. See Mosier, 142 N.H. at 423. Father argues that, because Mosier involved an appeal from superior court, its holding does not apply in RSA chapter 169-C proceedings. He asserts that although there are Superior Court Rules expressly requiring

---

[1] Father also argues that he was not served properly under RSA 169-C:6, IV. See RSA 169-C:6, IV (2022). We agree with DCYF that this argument is not preserved for our review because Father did not raise it in the trial court, and we therefore do not address it. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).

2

immediate appeal of personal jurisdiction rulings, the Circuit Court - Family Division Rules are silent on this matter, thereby indicating that <u>Mosier</u> does not apply in RSA chapter 169-C proceedings.  Father also observes that <u>Mosier</u> did not address whether the relevant Superior Court Rules apply in RSA chapter 169-C proceedings.

[¶6] Nothing in the language or reasoning of <u>Mosier</u> limits its holding to cases originating in the superior court.  <u>See</u> <u>Mosier</u>, 142 N.H. at 423-24. <u>Mosier</u> relied on our common law — not court rules — to support its holding. <u>See id</u>.  Specifically, <u>Mosier</u> cited <u>Morel v. Marable</u>, 120 N.H. 192, 193-94 (1980), in which we held that the defendant waived her objection to the court's exercise of personal jurisdiction when she failed to appeal the jurisdictional issue and proceeded to the merits.  <u>See</u> <u>Mosier</u>, 142 N.H. at 424; <u>Morel</u>, 120 N.H. at 193-94.  We observed in <u>Morel</u> that this holding "has long been the rule in this State." <u>Morel</u>, 120 N.H at 194.

[¶7] The current Superior Court and Circuit Court - District Division Rules mirror our common law by providing that a challenge to the denial of a motion to dismiss on personal jurisdiction, sufficiency of process, or sufficiency of service of process grounds will be deemed waived if an appeal is not filed within 30 days of the decision.  <u>See</u> <u>Super. Ct. R.</u> 9(e); <u>Dist. Div. R. (Elect. Filing)</u> 3.9(e); <u>see also</u> <u>Super. Ct. R.</u> 46(b) (providing that order denying motion to dismiss on personal jurisdiction, process, or service of process grounds may be appealed pursuant to Supreme Court Rule 7); <u>Dist. Div. R. (Elect. Filing)</u> 3.46(b) (same).  Those rules were adopted after <u>Mosier</u> was decided.[2]  However, the absence of a similar Circuit Court - Family Division Rule does not render invalid the common law rule established in <u>Mosier</u> or prevent its application to RSA chapter 169-C proceedings.

[¶8] Father also contends that we should not apply <u>Mosier</u> to RSA chapter 169-C proceedings because such proceedings are expedited and generally are not suspended during the pendency of an appeal to this court. We construe this as an argument that requiring an immediate appeal from an adverse personal jurisdiction ruling will delay or halt child protection proceedings, which could negatively impact the children involved.  We are unpersuaded that our holding — merely requiring a party to <u>file</u> an immediate appeal from an adverse personal jurisdiction ruling — will impede the expeditious handling of child protection cases.  We need not address in this appeal whether, during the pendency of an appeal on personal jurisdiction grounds, the underlying child protection proceeding should be stayed or suspended.  <u>Cf</u>. RSA 169-C:28, I (2022) (providing that an appeal from a final

---

[2] <u>See</u> <u>Super. Ct. R.</u> 9(e) cmt. (adopted May 22, 2013, eff. Oct. 1, 2013) (explaining that rule is "[i]n accordance with <u>Mosier</u>"); <u>Super. Ct. R.</u> 46(b) (adopted May 22, 2013, eff. Oct. 1, 2013); <u>Dist. Div. R.</u> 3.9(e) (adopted Oct. 29, 2019, eff. Feb. 12, 2020); <u>Dist. Div. R.</u> 3.46(b) (adopted Oct. 29, 2019, eff. Feb. 12, 2020).

dispositional order "shall not suspend the order or decision of the court unless the court so orders").

[¶9] We conclude that Mosier applies with equal force in RSA chapter 169-C proceedings and now apply Mosier to the facts of this case. Father failed to immediately appeal the court's denial of his motion to dismiss for inadequate service of process, and, instead, participated in the adjudicatory hearing on the merits of the neglect petition. Accordingly, we conclude that Father waived his service of process challenge, and, therefore, we do not reach the merits of that claim. See Mosier, 142 N.H. at 423-24; Morel, 120 N.H. at 194.

[¶10] We take this opportunity to make clear the procedure for appealing a denial of a motion to dismiss for lack of personal jurisdiction. In Mosier, we held that such appeals would be governed by Supreme Court Rule 7 and noted that we had discretion under that rule to accept or decline any such appeal. Mosier, 142 N.H. at 424. In 1997, when Mosier was decided, this court had discretion under Supreme Court Rule 7 to decline almost any appeal. See State v. Polk, 154 N.H. 59, 60 (2006). In 2004, the Supreme Court Rules were amended to differentiate between discretionary and mandatory appeals, thereby "chang[ing] our practice by making acceptance of most appeals mandatory." Id.; see also 5 Gordon J. MacDonald, New Hampshire Practice: Wiebusch on New Hampshire Civil Practice and Procedure § 60.03, at 60-7 (4th ed. 2014). This change, however, did not alter the discretionary nature of an appeal from an adverse ruling on personal jurisdiction because such an appeal does not fall within the definition of a "[m]andatory appeal." Sup. Ct. R. 3 (defining "Mandatory appeal"). Accordingly, we clarify that all appeals from a denial of a motion to dismiss for lack of personal jurisdiction are discretionary appeals, see id., governed by Supreme Court Rule 7(1)(B) and must be filed "within 30 days from the date on the clerk's written notice of the decision," Sup. Ct. R. 7(1)(B); cf. Super. Ct. R. 9(e)(2) ("If the party appeals the denial [of a motion to dismiss challenging personal jurisdiction, sufficiency of process, or sufficiency of service of process], and the supreme court declines the appeal . . . ." (emphasis added)); Dist. Div. R. 3.9(e)(2) (same).

[¶11] Father next argues that there is insufficient evidence to support the trial court's neglect finding. When reviewing final orders in abuse and neglect cases, we will uphold the findings and rulings of the circuit court unless they are unsupported by the evidence or tainted by error of law. In re C.C., 174 N.H. 773, 776 (2022). As the trier of fact, the circuit court is in the best position to assess and weigh the evidence before it. Id. Thus, our task is not to determine whether we would have found differently, but, rather, whether a reasonable person could have found as the circuit court did. Id. In making this assessment, we view the facts in the light most favorable to the circuit court's decision. See In re N.T., 175 N.H. 300, 311 (2022).

4

[¶12]  RSA 169-C:3, XIX provides three independent statutory definitions of "[n]eglected child."  RSA 169-C:3, XIX(a)-(c); see also In re Thomas M., 141 N.H. 55, 58 (1996).  DCYF alleged that J.M. was neglected under all three definitions, and we construe the trial court's order as determining that J.M. met all three definitions.  See State v. Surrell, 171 N.H. 82, 88 (2018) ("The interpretation of a trial court order presents a question of law for us to decide.").  Nonetheless, in order to sustain the neglect finding, we need conclude only that DCYF met its burden of proof as to one of the definitions.  See Thomas M., 141 N.H. at 58.  Father's primary sufficiency challenge is that the court erred when it found that he neglected J.M. by abandoning her.  Accordingly, we focus our analysis on whether there is sufficient evidence that J.M. was "abandoned" under RSA 169-C:3, XIX(a).

[¶13]  RSA 169-C:3, XIX(a) provides that a "[n]eglected child" includes one "[w]ho has been abandoned by his or her parents, guardian, or custodian." In the context of RSA chapter 169-C, "'[a]bandoned' means the child has been left by his parent . . . without provision for his care, supervision or financial support although financially able to provide such support."  RSA 169-C:3, I (2022).  DCYF had the burden to prove its neglect allegations by a preponderance of the evidence.  See RSA 169-C:13 (2022).

[¶14]  Based on our review of the record, we conclude that the neglect finding under RSA 169-C:3, XIX(a) is supported by sufficient evidence.  From October 2022 until Mother's death, a stalking final order of protection prevented Father from contacting Mother.  However, the order specifically gave Father the right to supervised visitation with J.M.  Father claims that the order made it "unreasonably burdensome" for him to have contact with J.M. because it gave Mother, not him, the power to initiate visits and, if he had reached out to a supervised visitation center, that conduct could have been construed as third-party contact with Mother.

[¶15]  We do not read the stalking final order of protection so restrictively.  See Surrell, 171 N.H. at 88.  Nevertheless, even if the order could be construed in the manner Father posits, Father made, at best, minimal efforts to enforce his right to contact with J.M.  He testified that he made one phone call to a legal aid organization and one to the court in an effort to determine how to lawfully contact his child.  Those inquiries proved unilluminating, and the record does not support that Father made further attempts to establish contact.  Father testified that he had not seen J.M. for 18 months.  He further testified that he had not provided J.M. with support "in any way in the last two years," even though he also stated that he is currently employed and able to pay rent.  This evidence is sufficient to support the trial court's finding of neglect under RSA 169-C:3, XIX(a).  Cf. In re H.J., 171 N.H. 605, 606, 609-11 (2018) (affirming termination of parental rights on grounds of abandonment when father left child in mother's care without communication for at least six months and, among other things, failed to fully exercise his

5

visitation rights despite the opportunity to do so).  We therefore sustain the neglect finding.  See Thomas M., 141 N.H. at 58.

[¶16]  Finally, Father contends that the trial court erred when it continued J.M.'s out-of-home placement instead of placing J.M. in Father's custody under the supervision of DCYF.  We disagree.  RSA 169-C:19, I, gives the trial court discretion to allow a neglected child to remain with the child's parent under the legal supervision of DCYF.  See RSA 169-C:19, I (2022).  On this record, we conclude that the trial court sustainably exercised its discretion in declining to place J.M. with Father.  See State v. Lambert, 147 N.H. 295, 296 (2001) (describing unsustainable exercise of discretion standard of review).

Affirmed.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred.